Filing # 17218279 Electronically Filed 08/18/2014 04:08:45 PM

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND
FOR HILLSBOROUGH COUNTY,
FLORIDA

CASE NO:

MARISELA HERRERA and LUZ
SANCHEZ, individually and on behalf of
others similarly situated,

        Plaintiff,

v.

JFK MEDICAL CENTER LIMITED
PARTNERSHIP d/b/a JFK CENTER, and
HCA HOLDINGS, INC,

        Defendants.

_____/

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

    Plaintiffs MARISELA HERRERA and LUZ SANCHEZ, individually and on behalf of

all others similarly situated, hereby file suit against Defendants, JFK MEDICAL CENTER

LIMITED PARTNERSHIP, and HCA HOLDINGS, INC., and allege:

## I.    INTRODUCTION

    1.    Plaintiffs Marisela Herrera and Luz Sanchez bring this Class Action Complaint

against JFK Medical Center Limited Partnership, doing business under the name JFK Medical

Center, and HCA Holdings, Inc., challenging Defendants' unreasonable, unconscionable, and

unlawful pricing and billing practices with respect to Plaintiffs and other similarly-situated

patients who received emergency medical treatment at a Florida HCA hospital following a motor

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Exhibit A
to Notice of Removal

vehicle accident and were billed exorbitant and unreasonable charges for radiological services partially covered through their Florida Personal Injury Protection insurance coverage ("PIP").

2.      PIP is required of all drivers in Florida.  By statute, hospitals treating patients covered by PIP may charge the insurer and the injured party only a "reasonable amount" for services and supplies rendered. § 627.736(5)(a), Fla. Stat. The charge for such services and supplies "may not exceed the amount the person or institution customarily charges for like services or supplies" and the "reasonable amount" for such services and supplies is directly related to the "usual and customary charges and payments accepted by the provider" for such services and supplies, as well as "reimbursement levels in the community" and "federal and state medical fee schedules." *Id.*

3.      With numerous emergency care facilities in Florida, Defendants see thousands of patients each year, many of whom receive imaging studies, such as CT scans, MRIs, Ultrasounds, and X-rays (collectively referred to as "Radiological Services").

4.      In direct contravention of the Florida Motor Vehicle No-Fault Law ("PIP Statute"), Florida HCA hospitals and emergency facilities, including Defendant JFK Medical Center, charge well in excess of the "reasonable amount" for Radiological Services provided to PIP-covered patients.  Upon information and belief, the HCA hospitals and emergency facilities charge PIP patients rates for Radiological Services that are 20 to 65 times higher than the rates charged for similar Radiological Services for non-PIP patients.

5.      These exorbitant and unreasonable charges harm Plaintiffs in two different ways.  First, because PIP covers only up to 80% of the emergency medical care received, § 627.736(1)(a)(3), Fla. Stat., the exorbitant and unreasonable charges leave Plaintiffs responsible for at least 20% of Defendants' inflated bills.   Second, the exorbitant and

unreasonable charges prematurely exhaust the PIP coverage available to Plaintiffs, resulting in Plaintiffs having to pay out of pocket for additional medical services that would otherwise have been covered under PIP.

6.      Plaintiffs bring this class action on behalf of themselves and all other similarly-situated individuals (or their guardians or representatives) who received PIP-covered emergency care Radiological Services at an HCA-operated facility in Florida and who either:  (a) were billed by the facility for the remaining 20% of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services and, as a result, were left to pay out of pocket for additional medical services rendered by the facility and/or third-party providers that would otherwise have been covered under PIP.

## II.    JURISDICTION

7.      This is a class action for damages that exceed $15,000.00, exclusive of interest and costs.

8.      Plaintiff Herrera is a citizen and resident of Florida, over the age of eighteen years, and otherwise *sui juris*.

9.      Plaintiff Sanchez is a citizen and resident of Florida, over the age of eighteen years, and otherwise *sui juris*.

10.      Defendant JFK Medical Center Limited Partnership is a Delaware partnership, whose partners are not citizens of Florida, authorized to do business and doing business in Florida.  JFK Medical Center is engaged in substantial, continuous, systematic and non-isolated business activity within the state of Florida.  JFK Medical Center is subject to personal

jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and it committed the tortious acts alleged herein in the state of Florida.

11.     Defendant HCA Holdings, Inc., ("HCA") is a Delaware corporation authorized to do business and doing business throughout Florida through approximately 80 HCA-owned hospitals, medical centers and surgical centers, among them JFK Medical.  Venue is proper in Hillsborough County, where HCA maintains an agent or other representative, and conducts business through its numerous subsidiaries, including hospitals, medical centers and surgical centers owned or operated by subsidiaries or affiliates of HCA. These facilities include Tampa Community Hospital, Memorial Hospital in Tampa, Brandon Regional Hospital, Brandon Regional Hospital Emergency Center at Plant City, and South Bay Hospital.  HCA is engaged in substantial, continuous, systematic and non-isolated business activity within the state of Florida, including Hillsborough County. HCA is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and it committed the tortious acts alleged herein in the state of Florida.

12.     At all times material hereto, Defendant HCA controlled, owned, and operated JFK Medical Center.

13.     Upon information and belief, Defendant HCA exercises control over its hospitals, medical centers, and surgical centers, including Defendant JFK Medical Center, by developing and controlling pricing practices, including pricing policies and practices for PIP-insured patients, and exerting control over its member hospitals' pricing policies, including the policy and practice to impose unreasonable and inflated rates upon PIP-insured patients.

14.     At all times and for all acts material hereto, each HCA-owned Florida hospital, medical center, and surgical center, including Defendant JFK Medical Center, was and is the

agent of Defendant HCA, and acted in the course and scope of its agency and was acting with the consent, permission, authorization, satisfaction, and knowledge of HCA, which ratified and approved of the actions of its hospitals, medical centers, and surgical centers.

## III.   FACTUAL ALLEGATIONS

### A.   The Florida PIP Statute

15.   The Florida Motor Vehicle No-Fault Law requires all residents of Florida who own a motor vehicle to purchase PIP in the amount of $10,000 per person.  § 627.736(1), Fla. Stat.   PIP covers loss resulting from bodily injury, sickness, or disease arising out of the ownership, maintenance, or use of a motor vehicle if, inter alia, a physician, dentist, physician assistant, or advanced registered nurse practitioner has determined that the injured person had an emergency medical condition.  § 627.736(1)(a)(3), Fla. Stat.

16.   Under section 627.736(5)(a) of the PIP Statute, a physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by PIP may charge the insurer and the injured party "only a reasonable amount pursuant to this section for the services and supplies rendered."  Further, such charge "may not exceed the amount the person or institution customarily charges for like services or supplies." §627.736(5)(a), Fla. Stat.   The PIP Statute also explicitly defines the methodology for determining whether a charge for services or treatment is "reasonable":

> [C]onsideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

*Id.*

17.     PIP covers only up to 80% of the charges incurred as a result of emergency medical care received, § 627.736(1)(a)(3), Fla. Stat., thus leaving PIP-covered patients responsible for at least 20% of these charges.  Once the $10,000 of PIP coverage is exhausted, PIP-covered patients are responsible for 100% of any additional charges incurred.

### }.     HCA's Violation of PIP

18.     When emergency care patients arrive at Defendant JFK Medical Center, they are required to sign contracts of adhesion governing the conditions of admission and treatment. Although the contracts contain generic financial liability provisions, they do not identify, describe, or specify the pricing terms or financial liability for any signing patient.   Upon information and belief, emergency care patients at all HCA facilities in Florida are required to sign the same or substantially similar contracts as those used at JFK Medical Center.  As noted above, pursuant to the PIP Statute, the hospitals may charge only a "reasonable amount" for emergency services and that amount "may not exceed the amount the [hospital] customarily charges for like services or supplies." §627.736(5)(a), Fla. Stat.

19.     In direct contrast to the PIP Statute's requirement that hospitals charge only a "reasonable amount," Defendants bill for emergency Radiological Services provided to PIP-covered patients at grossly inflated, unreasonable rates.   Upon information and belief, these Radiological Services are billed at rates as much as 20 to 65 times higher than those charged to non-PIP patients getting the same services.  As a direct result of Defendants' billing at exorbitant and unreasonable rates, PIP emergency-care patients are billed more for their 20% out-of-pocket portion of the rates charged for emergency Radiological Services than they would have been if such services were provided at reasonable rates.  Defendants' exorbitant and unreasonable rates

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

also deplete the PIP coverage available to the patients at a faster rate, resulting in the patients being billed out-of-pocket for additional medical services rendered by Defendants and third-party providers that would have otherwise been covered under PIP.

### C.   **Plaintiff Herrera's Experience with HCA**

20.   On or about April 9, 2013, Ms. Herrera was involved in an automobile accident. As a result of the accident, Ms. Herrera needed medical care and treatment, which she received through the emergency department at JFK Medical Center. Upon admission, Ms. Herrera executed a "Conditions of Admission" form (attached as Exhibit A). Among other things, the "Conditions of Admission" form had Ms. Herrera acknowledge that she agreed to pay "the rates stated in the hospital's price list (known as the 'Charge Master')." The so-called "price list," however, was never provided to Ms. Herrera.

21.   The emergency room physician who treated Ms. Herrera ordered a CT scan of her cervical spine without contrast; a CT scan of her brain without contrast; an x-ray of her lumbar spine with 4 views; and an x-ray of her thoracic spine with 3 views.

22.   JFK Medical Center billed the following exorbitant and unreasonable charges for these Radiological Services: $5,900 for the CT scan of her spine; $6,404 for the CT scan of her brain; $3,359 for the lumbar spine x-ray; and $2,222 for the thoracic spine x-ray. (See Exhibit B).

23.   Because of the exorbitant and unreasonable amounts of these charges, Plaintiff Herrera's PIP coverage of $10,000 was prematurely exhausted, she was billed by JFK Medical Center for Radiological Services that were not paid by her PIP insurer, and she had to pay out of

pocket for other medical services rendered by third party providers that would have otherwise been covered by her PIP benefits if not prematurely exhausted by Defendants' unreasonable charges. To date, Plaintiff Herrera has been billed over $6,500 by JFK Medical Center for Radiological Services.  She has also separately paid over $4,000 out of pocket for medical services rendered by third parties related to her automobile accident.

**D.    Plaintiff Sanchez's Experience with HCA**

24.    On or about May 1, 2013, Ms. Sanchez was involved in an automobile accident.  As a result of the accident, Ms. Sanchez needed medical care and treatment, which she received through the emergency department at JFK Medical Center.  Upon admission, Ms. Sanchez executed a "Conditions of Admission" form (attached as Exhibit C).  Among other things, the "Conditions of Admission" form had Ms. Sanchez acknowledge that she agreed to pay "the rates stated in the hospital's price list (known as the 'Charge Master')."  The so-called "price list," however was never provided to Ms. Sanchez.

25.    The emergency room physician who treated Ms. Sanchez ordered a CT scan of her cervical spine without contrast; a CT scan of her brain without contrast; and an x-ray of her thoracic spine with 3 views.

26.    JFK Medical Center billed Ms. Sanchez's Personal Injury Protection insurance $5,900 for the CT scan of her spine; $6,404 for the CT scan of her brain; and $2,222 for the thoracic spine x-ray.  (See Exhibit D).

27.    Because of the exorbitant and unreasonable amounts of these charges, Plaintiff Sanchez's PIP coverage of $10,000 was prematurely exhausted, she was billed

by JFK Medical Center for Radiological Services that were not paid by her PIP insurer, and she had to pay out of pocket for other medical services rendered by third party providers that would have otherwise been covered by her PIP benefits if not prematurely exhausted by Defendants' unreasonable charges. To date, Plaintiff Sanchez has been billed over $2,500 by JFK Medical Center for Radiological Services. She has also separately paid over $2,000 out of pocket for medical services rendered by third parties related to her automobile accident.

### E. Plaintiffs and All Class Members Have Been Charged Unreasonable Rates for Radiological Services

28.     Defendants' charge to Plaintiffs of over $5,000 for CT scans of the cervical spine without contrast is unreasonable, exorbitant, and unfairly inflated:

a.     The South Florida Medicare rate for a CT scan of the cervical spine without contrast is $213.14. Defendants billed the Plaintiffs at a rate more than 20 times higher than the Medicare rate for the performance of a CT scan of the cervical spine without contrast.

b.     Upon information and belief, Defendants' charge of over $5,000, for a CT scan of the cervical spine without contrast, greatly exceeds the amount Defendants usually and customarily charge for and the payment usually and customarily accepted for

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer.

    c.    Upon information and belief, Defendants' charge of over $5,000 for a CT scan of the cervical spine without contrast greatly exceeds the amount other hospitals in the same market charge and accept for the same service.

    d.    Upon information and belief, Defendants' charge of over $5,000 for a CT scan of the cervical spine without contrast greatly exceeds Defendants' costs in providing such service.

29.    Defendants' charge to Plaintiffs of over $6,000 for CT scans of the brain without contrast is unreasonable, exorbitant, and unfairly inflated:

    a.    The South Florida Medicare rate for a CT scan of the brain without contrast is $163.96. Defendants billed the Plaintiffs at a rate over 30 times higher than the Medicare rate for the performance of a CT scan of the brain without contrast.

    b.    Upon information and belief, Defendants' charge of over $6,000, for a CT scan of the brain without contrast, greatly exceeds the amount Defendants usually and customarily charge for and the payment usually and customarily accepted for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer.

     c.     Upon information and belief, Defendants' charge of over $6,000 for a CT scan of the brain without contrast greatly exceeds the amount other hospitals in the same market charge and accept for the same service.

     d.     Upon information and belief, Defendants' charge of over $6,000 for a CT scan of the brain without contrast greatly exceeds Defendants' costs in providing such service.

30.    Defendants' charge to Plaintiffs of over $2,000 for thoracic spine x-rays with 3 views is unreasonable, exorbitant, and unfairly inflated:

     a.     The South Florida Medicare rate for an x-ray of the thoracic spine with 3 views is $38.  Defendants billed the Plaintiffs at a rate more than 58 times higher than the Medicare rate for the performance of an x-ray of the thoracic spine with 3 views.

     b.     Upon information and belief, Defendants' charge of over $2,000, for an x-ray of the thoracic spine with 3 views, greatly exceeds the amount Defendants usually and customarily charge for and the payment usually and customarily accepted for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer.

     c.     Upon information and belief, Defendants' charge of over $2,000 for an x-ray of the thoracic spine with 3 views greatly exceeds the amount other hospitals in the same market charge and accept for the same service.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile: (561) 515-1401*

d.      Upon information and belief, Defendants' charge of over $2,000 for an x-ray of the thoracic spine with 3 views greatly exceeds Defendants' costs in providing such service.

31.     Defendants' charge to Plaintiffs of over $3,000 for lumbar spine x-rays with 4 views is unreasonable, exorbitant, and unfairly inflated:

a.      The South Florida Medicare rate for an x-ray of the lumbar spine with 4 views is $51.  Defendants billed the Plaintiffs at a rate more than 65 times higher than the Medicare rate for the performance of an x-ray of the lumbar spine with 4 views.

b.      Upon information and belief, Defendants' charge of over $3,000 for an x-ray of the lumbar spine with 4 views greatly exceeds the amount Defendants usually and customarily charge for and the payment usually and customarily accepted for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer.

c.      Upon information and belief, Defendants' charge of over $3,000 for an x-ray of the lumbar spine with 4 views greatly exceeds the amount other hospitals in the same market charge and accept for the same service.

d.      Upon information and belief, Defendants' charge of over $3,000 for an x-ray of the lumbar spine with 4 views greatly exceeds Defendants' costs in providing such service.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

32.    At no time prior to their admission to the emergency department at JFK Medical Center were the Plaintiffs advised by Defendants that they would be charged such exorbitant and unreasonable prices for the Radiological Services that they required. Neither Plaintiff was provided the Defendants' price list prior to receiving those emergency services. Moreover, Plaintiffs had no ability to determine in advance the rates that would be charged by Defendants for these emergency medical services.

33.    The prices that Defendants charged for the Radiological Services Plaintiffs received were partially paid by the Plaintiffs' PIP insurance carriers, and Plaintiffs have been billed for the outstanding balances on their accounts. See Exhibits B and D.

34.    As a direct result of Defendants' billing at exorbitant and unreasonable rates, Plaintiffs were damaged in two different ways: (a) they were billed more for their out-of-pocket portion of the rates charged for Radiological Services than they would have been if such services were provided at reasonable rates; and (b)  their PIP coverage was exhausted at a faster rate, resulting in Plaintiffs having to pay out of pocket for additional medical services rendered by Defendants and third party providers that would have otherwise been covered under PIP.

## IV. CLASS ACTION ALLEGATIONS

35.    Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 34.

36.    Pursuant to Florida Rules of Civil Procedure 1.220(a) and 1.220(b)(3), Plaintiffs bring this action on behalf of themselves and a class of all other persons similarly situated and defined as follows:

> All individuals (or their guardians or representatives)who received PIP-covered emergency care radiological services at an HCA-operated facility

in Florida and who either: (a) were billed by the facility for the remaining 20% of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services and, as a result, were left to pay out of pocket for additional medical services rendered by the facility and/or third-party providers that would otherwise have been covered under PIP.

Excluded from the Class are Defendants, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of any Defendant, and any judicial officer assigned to this matter and his or her immediate family.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

37.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements. Plaintiffs seek to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

38.     Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs believe and, on that basis, allege that the proposed Class is so numerous that joinder of all members would be impracticable. Based on the number of patients that Defendants treat in their emergency care facilities following automobile accidents, it is apparent that thousands of consumers have been billed exorbitant prices for the medical services referenced herein such that the number of individual plaintiffs would make joinder impossible.

39.     Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia*:

a.     Whether Defendants' charges to PIP patients for Radiological Services were "reasonable";

b.     Whether Defendants had a policy and practice of pricing, billing, and seeking payment from PIP patients for Radiological Services at unreasonable rates;

c.     Whether Defendants' practices of overcharging for Radiological Services were deceptive, unlawful, or unfair in any respect thereby violating Florida's Deceptive and Unfair Trade Practices Act. (FDUPTA), Fla. Stat. § 501.201, et seq.;

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

     d.     Whether Defendants' practices of overcharging for Radiological Services constituted a breach of contract;

     e.     Whether Defendants' conduct injured the putative Class members and, if so, the extent of the damages; and

     f.     Whether Defendants have been unjustly enriched, such that disgorgement of profits is proper, for the wrongful conduct alleged herein.

40.     Plaintiffs are members of the putative Class. The claims asserted by the Plaintiffs in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendants and the relief sought is common. Defendants overcharged Plaintiffs for the same Radiological Services, received partial payment for those services from the Plaintiffs' PIP insurance carriers, and billed Plaintiffs for the remaining outstanding balance. Plaintiffs also had to pay out of pocket for additional medical services rendered by Defendants and third party providers that would have otherwise been covered under PIP had Defendants' inflated charges not prematurely exhausted the coverage.

41.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class, as their interests are coincident with, not antagonistic to, the other Class members. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

42.     Certification of the Class is appropriate pursuant to Florida Rule of Civil Procedure 1.220 because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

43.     A class action is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

44.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

### COUNT I – Violation of Florida's Deceptive and Unfair Trade Practices Act Against All Defendants

45.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 44.

46.     In Florida, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

47.     Plaintiffs, individually, and the members of the putative Class are "consumers" within the meaning of Florida Statute Section 501.203.

48.     Defendants' practice of charging exorbitant and unreasonable rates for Radiological Services following motor vehicle accidents constitutes unfair, deceptive, or

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes.

49.     Failure to disclose material information may cause deception within the meaning of FDUTPA.  Such deception has occurred here as Defendants have failed to disclose important material information concerning their inflated pricing scheme to PIP-insured patients prior to or at the time of the provision of emergency medical treatment and services.

50.     Defendants engage in the unfair and deceptive trade practices described herein in violation of the PIP Statute, which prohibits them from charging more than a "reasonable amount" for emergency medical services billed under PIP.  Defendants utilize the patients' PIP coverage as a means to bill and be paid for unreasonable, inflated charges for emergency Radiological Services.

51.     Defendants' pricing practices with regard to PIP-insured patients are unconscionable and constitute unfair and deceptive methods of competition in violation of one or more of the following:

    a.     The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or by the federal courts, as set forth in FDUTPA, §§ 501.203(3)(b) and 501.204; and/or

    b.     The law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and incorporated into FDUTPA, §§ 501.203(3)(c) and 501.204.

52.     Defendants' conduct amounts to "unfair" business practices insofar Defendants fail to charge Plaintiffs and Class members reasonable rates as required by the PIP Statute. Defendants' practices offend established public policies, and are immoral, unethical, oppressive, and unscrupulous. Once Defendants' emergency facilities' billing department determines that a

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

patient's medical care will be covered by PIP insurance, Defendants' practice of overcharging the patient is triggered and carried out by the submission of the bills to the PIP insurance carrier.

53.     Defendants' conduct also constitutes "deceptive" business practices within the meaning of FDUTPA in that Defendants fail to inform and/or conceal from PIP-insured patients their uniform policy of billing unreasonable rates and requiring payment for Radiological Services covered by PIP at rates several times higher than rates billed to other patients and/or at rates substantially higher than the cost to Defendants for the provision of emergency treatment/services, as set forth herein.

54.     As a result of these unfair and deceptive trade practices, Plaintiffs individually, and the members of the putative Class, have suffered actual damages in that they have paid and/or become obligated to pay excessive and artificially inflated medical bills for emergency radiological services as a result of Defendants' billing policies, and are entitled to their actual damages, and/or had to pay out-of-pocket other health care providers because the Defendants' inflated rates exhausted their PIP coverage.

55.     As a result of the aforementioned conduct, Plaintiffs individually, and the members of the putative Class, are entitled to permanent injunctive relief to prevent Defendants from continuing to engage in these unfair and deceptive trade practices and to stop all efforts to collect excess unpaid charges.

56.     Pursuant to Florida Statute Section 501.2105, Plaintiffs, individually, and as members of the putative Class, are entitled to recover costs and reasonable attorneys' fees in this action.

## COUNT II – Breach of Contract Claim Against All Defendants

57.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 44.

58.     Plaintiffs entered into a contract with Defendants' emergency care facilities titled "Conditions of Admission" upon entering the emergency department.   Each of the Plaintiffs entered into the exact same contract with the Defendants with the exact same terms.   Each of the putative Class members entered into the same or substantially similar contract with one of Defendant HCA's Florida facilities.   A copy of each of the Plaintiffs' contracts is attached hereto.

59.     The "Conditions of Admission" contract provides that Plaintiffs "promise to pay the patient's account at the rates stated in the hospital's price list (known as the 'Charge Master') effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account."

60.     Plaintiffs were not provided a copy of the hospital's price list at the time of their admission.   As a result of the Contracts' vague, ambiguous, undefined, and nondescript pricing term, applicable law implies a contractual obligation on Plaintiffs to pay for no more than the reasonable value services provided under the Contracts, and a corresponding obligation on Defendants to bill for no more than the reasonable value of the services provided under the Contracts.

61.     Moreover, as the substance of the Contracts is the subject of statutory regulation under the PIP Statute, the parties are presumed to have entered into their agreement with reference to such statutory regulation.   The requirement on Defendants to bill no more than a

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

reasonable amount for PIP-covered services, as provided in the PIP Statute, is therefore part of the contract between Defendants and Plaintiffs.

62.     Under Florida law, Defendants breached the Contracts by charging unreasonable amounts for PIP-covered Radiological Services that are several times higher than reimbursement rates from other categories of patients signing the same Contract, several times higher than the cost to Defendants for providing the treatment and services, and several times higher than the reasonable value of the treatment and services provided.

63.     As a result of Defendants' breach of contract, Plaintiffs have been damaged in that they have paid and/or become obligated to pay excessive, artificially inflated, and unreasonable medical bills for Radiological Services.

### COUNT III – Breach of the Implied Covenants of Good Faith and Fair Dealing
### Against All Defendants

64.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 44.

65.     Defendants breached Florida's implied covenant of good faith and fair dealing. Defendants included as part of the Conditions of Admissions an express contract term for patients to pay the rates on the Charge Master price list. Defendants had an obligation not to set those rates in an arbitrary, capricious or unreasonable manner that exceeded the justifiable expectations of PIP-insured patients.   Defendants violated that covenant by charging unreasonable rates for Radiological Services for PIP-insured patients.

66.     As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in that they have paid and/or become obligated to pay

excessive, artificially inflated, and unreasonable medical bills for Radiological Services and medical bills for additional services rendered by third party providers.

### COUNT IV - Unjust Enrichment Claim Against All Defendants

67. Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 44.

68. Plaintiffs, individually, and every member of the putative Class, conferred a benefit on Defendants in that they paid for Radiological Services from Defendants' emergency care facilities following a motor vehicle accident for which PIP insurance coverage existed, thereby guaranteeing payment to Defendants for medical services provided.

69. Defendants had knowledge that the Plaintiffs, individually, and every member of the putative Class, conferred this benefit on Defendants.

70. Defendants accepted the benefit from the Plaintiffs individually and from every member of the putative Class and retained it under circumstances that are inequitable for Defendants to retain the benefit.

71. Under Florida law, it is inequitable for Defendants to retain the benefit conferred upon them by Plaintiffs individually and from every member of the putative Class, because that benefit results from Defendants' unlawful practice of overbilling PIP-insured patients for Radiological Services.

72. As a direct and proximate result, Plaintiffs, individually, and the members of the putative Class, have been damaged economically and are entitled to restitution of the amounts charged in excess of the reasonable amounts for Radiological Services provided by Defendants, in addition to all other damages allowable by law.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

**WHEREFORE,** Plaintiffs Marisela Herrera and Luz Sanchez, individually and on behalf of all others similarly-situated, demand judgment against Defendants, JFK Medical Center Limited Partnership, doing business under the name JFK Medical Center, and HCA Holdings, Inc., for injunctive relief, damages, interest, and costs and, all other relief deemed just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all matters triable as of right by a jury.

DATED this 18th day of August, 2014.

Respectfully submitted,

s/Theodore J. Leopold
Theodore J. Leopold (FL Bar No. 705608)
Leslie M. Kroeger (FL Bar No. 989762)
Diana L. Martin (FL Bar No. 624489)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile:  (561) 515-1401

Kimberly L. Boldt (FL Bar. No. 957399)
**BOLDT LAW FIRM**
215 S. 21st Avenue
Hollywood, FL 33020
Telephone: (954) 921-2225
Facsimile: (954) 921-2232

Charles E. Cartwright (FL Bar No. 983953)
Adriana Gonzalez (FL Bar No. 0060544)
**GONZALEZ, CARTWRIGHT & RIVERA P.A.**
813 Lucerne Avenue
Lake Worth, FL 33460
Telephone: (561) 533-0345
Facsimile: (561) 533-0195

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

Andrew N. Friedman
Matthew S. Axelrod
Douglas J. McNamara
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

**Attorneys for Plaintiffs**

ER
04/09/2013
KROSNEY, JUDSON
KROSNEY

JFK MEDICAL CENTER

HERRERA        MARISELA

### Conditions of Admission

**1. Consent to Treatment.** I consent to the procedures which may be performed during this hospitalization or on an outpatient basis, including emergency treatment or services, and which may include but are not limited to laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered to me as ordered by my physician or other healthcare professional on the hospital's medical staff. I understand that as part of their training, students in health care education may participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and hospital staff.

**2. Financial Agreement.** In consideration of the services to be rendered to me, or to the patient for whom I am accepting responsibility, I individually promise to pay the patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account. Some special items will be priced separately if there is no price listed on the Charge Master, or if the charge is listed as zero. An estimate of the anticipated charges for services to be provided to the patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

The hospital will provide a medical screening examination as required to all patients who are seeking medical services to determine if there is an emergency medical condition, without regard to the patient's ability to pay. If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity. However, patients who do not qualify under the hospital's charity care policy or other applicable policy are not relieved of their obligation to pay for these services.

If supplies and services are provided to a patient who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from the undersigned will be determined by the terms of the governmental program or private health insurance plan. If the patient is uninsured and not covered by a governmental program, the patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment. I understand that I may request information about these programs from the hospital.

I also understand that, as a courtesy to me, the hospital may bill my insurance company, but is not obligated to do so. Regardless, I agree that except where prohibited by law, the financial responsibility for the services rendered belongs to me, the undersigned. I agree to pay any services that are not covered and covered charges not paid in full by my insurance company. This includes, but is not limited to, coinsurance, deductibles, non covered benefits due to policy limits or policy exclusions as well as failure to comply with insurance plan requirements. I also agree that if the hospital must initiate collection efforts to recover amounts owed by me, then in addition to amounts incurred for the services rendered I will pay, to the extent permitted by law: (a) any and all costs incurred by the hospital in pursuing collection, including, but not limited to, reasonable attorneys' fees, and (b) any court costs or other costs of litigation incurred by the hospital that applicable rules or statutes permit the hospital to recover.

Patient: HERRERA, MARISELA       MRN         Encounter:          Page 1 of 6

Exhibit A

█████████          JFK MEDICAL CENTER                    HERRERA        MARISELA
ER                                                        ████████
04/09/2013
KROSNEY, JUDSON
KROSNEY

**3. Consent to Wireless Telephone Calls.** If at any time I provide a wireless telephone number at which I may be contacted, I consent to receive calls (including autodialed calls and prerecorded messages)at that wireless number from the hospital, its successors and assigns, and the affiliates, agents and independent contractors, including servicers and collection agents, of each of them regarding the hospitalization, the services rendered, or my related financial obligations.

**4. Consent to Email Usage for Discharge Instructions.** If at any time I provide an email address at which I may be contacted, I consent to receiving discharge instructions at that email address from the hospital. These discharge instructions may include, but not be limited to: post-operative instructions, physician follow-up instructions, dietary information, prescription information.

**5. Consent to Photographs, Videotapes and Audio Recordings.** I consent to photographs, videotapes, digital or audio recordings, and/or images of me being recorded for security purposes and/or the hospital's healthcare operations purposes (e.g. quality improvement activities). I understand that the facility retains the ownership rights to the images and/or recordings. I will be allowed to request access to or copies of the images and/or recordings when technologically feasible unless otherwise prohibited by law. I understand that these images and/or recordings will be securely stored and protected. Images and/or recordings in which I am identified will not be released and/or used outside of the facility without a specific written authorization from me or my legal representative unless otherwise required by law.

**6. Release of Information.** I permit the hospital and the physicians or other health professionals involved in the inpatient or outpatient care to release healthcare information for purposes of treatment, payment or healthcare operations. Healthcare information regarding a prior admission(s) at other HCA affiliated facilities may be made available to subsequent HCA-affiliated admitting facilities to coordinate patient care for case management purposes. Healthcare information may be released to any person or entity liable for payment on the patient's behalf in order to verify coverage or payment questions, or for any other purpose related to benefit payment. Healthcare information may also be released to my employer's designee when the services delivered are related to a claim under worker's compensation. If I am covered by Medicare or Medicaid, I authorize the release of healthcare information to the Social Security Administration or its intermediaries or carriers for payment of a Medicare claim or to the appropriate state agency for payment of a Medicaid claim. This information may include, without limitation, history and physical, emergency records, laboratory reports, operative reports, physician progress notes, nurse's notes, consultations, psychological and/or psychiatric reports, drug and alcohol treatment and discharge summary. Federal and state laws may permit this facility to participate in organizations with other healthcare providers, insurers, and/or other health care industry participants and their subcontractors in order for these individuals and entities to share my health information with one another to accomplish goals that may include but not be limited to: improving the accuracy and increasing the availability of my health records; decreasing the time needed to access my information; aggregating and comparing my information for quality improvement purposes; and such other purposes as may be permitted by law. I understand that this facility may be a member of one or more such organizations. This consent specifically includes information concerning psychological conditions, psychiatric conditions, intellectual disability conditions, genetic information, chemical dependency conditions and/or infectious diseases including, but not limited to, blood borne diseases, such as Hepatitis, Human Immunodeficiency Virus (HIV) and Acquired Immune Deficiency Syndrome (AIDS).

Patient: HERRERA, MARISELA              MRN: ████████    Encounter: ████████        Page 2 of 6

Exhibit A

JFK MEDICAL CENTER                    HERRERA          MARISELA

ER
04/09/2013
KROSNEY, JUDSON
KROSNEY

**7. Assignment of Benefits.** In executing this assignment of benefits, I am directing the health insurance carrier or other health benefit plan providing my coverage (including, but not limited to, any employer, employer group or trust sponsored or offered plan) to pay the hospital and/or hospital-based physicians directly for the services the hospital and/or hospital-based physicians provided to the patient during this admission. If the insurance carrier providing my coverage fails to pay the hospital or hospital-based physicians directly, as they are hereby directed to do, I acknowledge that it is my duty and responsibility to immediately pay any such benefits received by me to the hospital or hospital-based physicians. In return for the services rendered and to be rendered by the hospital and/or hospital-based physicians, I hereby irrevocably assign and transfer to the hospital and/or hospital-based physicians all right, title, and interest in all payments for the healthcare rendered, which are paid pursuant to any and all insurance policies and health benefit plans from which I am entitled to services or I am entitled to recover. I understand that any payment received from these policies and/or plans will be applied to the amount that I have agreed to pay for services rendered during this admission, as further described under section 2. I further hereby irrevocably assign and transfer to the hospital and/or hospital based physicians an independent, non-exclusive right of recovery against my insurer or health benefit plan, but this assignment shall not be construed as an obligation of the hospital and/or hospital based physicians to pursue any such right of recovery. I acknowledge and understand that I maintain my right of recovery against my insurer or health benefit plan and the foregoing assignment does not divest me of such right. In no event will the hospital and/or hospital-based physicians retain benefits in excess of the amount owed to the hospital and/or hospital based physicians for the care and treatment rendered during the admission. If a third party payer (such as an insurance company or employer group or trust sponsored or offered plan) may be obligated to pay some or all of these charges, I agree to take all actions necessary to assist the hospital and/or hospital based physicians in collecting payment from any such third party payer should the hospital or hospital based physicians elect to collect such payment. In the event the hospital and/or hospital based physicians elect to exercise its independent, non-exclusive right of recovery against the patient's insurer or health plan, I hereby appoint the hospital and/or hospital-based physicians as my authorized representative(s) to pursue, any administrative remedies, claims and/or lawsuits on my behalf and at the election of the hospital and/or hospital-based physicians, against any responsible third party, medical insurer, or employer sponsored medical benefit plan for purposes of collecting any and all hospital benefits due me for the payment of the charges referred to in section 2 above. If the hospital and/or hospital-based physicians elect to pursue a claim or lawsuit against a third party payer as authorized representative, I agree to execute a special power of attorney, if requested, authorizing the hospital and/or hospital-based physicians to take all actions necessary or appropriate in pursuit of such claim or lawsuit, including allowing the hospital to bring suit against the third party payer in my name. I agree to pay over to the hospital and/or hospital-based physicians immediately all sums recovered in any claim or lawsuit brought on my behalf by the hospital and/or hospital-based physicians (up to the amount of the charges of the hospital and/or hospital-based physicians,, plus expenses and attorney's fees. I have read and been given the opportunity to ask questions about this assignment of benefits, and I have signed this document freely and without inducement, other than the rendition of services by the hospital and/or hospital based physicians.

*Hospital-based physicians include but are not limited to: Emergency Department Physicians, Pathologists, Radiologists, and Anesthesiologists, Psychiatrists, Psychologists or other Behavioral Health Providers. These services are rendered by independent contractors and are not part of your hospital bill. These services will be billed for separately by each physician's billing company.*

Exhibit A



ER
04/09/2013
KROSNEY, JUDSON
KROSNEY

JFK MEDICAL CENTER          HERRERA          MARISELA

**8. Private Room.** I understand and agree that I or the party responsible for payment for hospital and medical services is responsible for any additional charges associated with the request and/or use of a private room.

**9. Communications About My Healthcare.** I authorize my healthcare information to be disclosed for purposes of communicating results, findings, and care decisions to my family members and others responsible for my care or designated by me. I will provide those individuals with a password or other verification means specified by the hospital.

**10. Medicare Patient Certification and Assignment of Benefit.** I certify that any information I provide in applying for payment under Title XVIII (Medicare) or Title XIX (Medicaid) of the Social Security Act is correct. I request payment of authorized benefits to be made on my behalf to the hospital or hospital-based physician by the Medicare or Medicaid program.

**11. Outpatient Medicare Patients.** Medicare does not cover prescription drugs except for a few exceptions. According to Medicare regulations, you are responsible for any drugs furnished to you while an outpatient that meet Medicare's definition of a prescription drug. These drugs are also referred to as self-administered drugs, as they are usually self-administered but they may be administered to you by hospital personnel. Medicare requires hospitals to bill Medicare patients or other third party payers for these drugs. Medicare Part D beneficiaries may submit a paper claim to the Medicare Part D Plan for possible reimbursement of these drugs in accordance with Medicare Drug Plan enrollment materials.

**12. Other Acknowledgements.**

   a. **Personal Valuables.** I understand that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss of or damage to any money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for the loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The liability of the hospital for loss of any personal property that is deposited with the hospital for safekeeping is limited to the greater of five hundred dollars ($500.00) or the maximum required by law, unless a written receipt for a greater amount has been obtained from the hospital by the patient. The hospital is not responsible for the loss or damage of cell phones, glasses or dentures or personal valuables unless they are placed in the hospital safe in accordance with the terms as stated above.

   b. **Weapons/Explosives/Drugs.** I understand and agree that if the hospital at any time believes there may be a weapon, explosive device, illegal substance or drug, or any alcoholic beverage in my room or with my belongings, the hospital may search my room and my belongings, confiscate any of the above items that are found, and dispose of them as appropriate, including delivery of any item to law enforcement authorities.

   c. **Additional Provision for Admission of Minors.** I, the undersigned, acknowledge and verify that I am the legal guardian or custodian of the minor/incapacitated patient.

   d. **Legal Relationship Between Hospital and Physicians.** Most or all of the health care professionals performing services in the hospital are independent contractors and are not hospital agents or employees. Independent contractors are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent contractors. I understand that physicians or other health care professionals may be called upon to

Patient: HERRERA, MARISELA          MRN:          Encounter          Page 4 of 6

Exhibit A

ER
04/09/2013
KROSNEY,JUDSON
KROSNEY

JFK MEDICAL CENTER                    HERRERA        MARISELA

provide care or services to me or on my behalf, but that I may not actually see, or be examined by, all physicians or health care professionals participating in my care; for example, I may not see physicians providing radiology, pathology, EKG interpretation and anesthesiology services. I understand that, in most instances, there will be a separate charge for professional services rendered by physicians to me or on my behalf, and that I will receive a bill for these professional services that is separate from the bill for hospital services.

e.  **Patient Visitation Rights.** I understand that I have the right to receive the visitors whom I or my support person designates, without regard to my relationship to these visitors. I also have the right to withdraw or deny such consent at any time. I will not be denied visitation privileges on the basis of race, color, national origin, religion, sex, gender identity, sexual orientation or disability. All visitors I designate will enjoy full and equal visitation privileges that are no more restrictive than those that my immediate family members would enjoy. Further, I understand that the hospital may need to place clinically necessary or reasonable restrictions or limitations on my visitors to protect my health and safety in addition to the health and safety of other patients. The hospital will clearly explain the reason for any restrictions or limitations if imposed. If I believe that my visitation rights have been violated, I or my representative has the right to utilize the hospital's complaint resolution system.

Patient:HERRERA, MARISELA          MRN:              Encounter:              Page 5 of 6

Exhibit A

JFK MEDICAL CENTER                    HERRERA      MARISELA

ER
04/09/2013
KROSNEY, JUDSON
KROSNEY

I have been given the opportunity to read and ask questions about the information contained in this form as well as this section of the form, and I acknowledge that I either have no questions or that my questions have been answered to my satisfaction.

Acknowledge: _M.H_____ (Initial)

**13. Patient Self Determination Act.**
I have been furnished information regarding Advance Directives (such as durable power of attorney for healthcare and living wills). I have also been furnished with written information regarding patient rights and responsibilities and other information related to my stay. Please initial or place a mark next to one of the following applicable statements:

| I executed an Advance Directive and have been requested to supply a copy to the hospital | I have not executed an Advance Directive, wish to execute one and have received information on how to execute an Advance Directive | I have not executed an Advance Directive and do not wish to execute one at this time |
|---|---|---|

**14. Notice of Privacy Practices.** I acknowledge that I have received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose my healthcare information for its treatment, payment, healthcare operations and other described and permitted uses and disclosures, I understand that I may contact the hospital Privacy Officer designated on the notice if I have a question or complaint. To the extent permitted by law, I consent to the use and disclosure of my information for the purposes described in the hospital's Notice of Privacy Practices.

Acknowledge: _M.H._____ (Initial)

| Date 9/13  Time 9:05 | I, the undersigned, as the patient or legal agent of the patient, hereby certify I have read, and fully and completely understand this Conditions of Admission and Authorization for Medical treatment, and that I have signed this Conditions of Admission and Authorization for Medical Treatment knowingly, freely, voluntarily and agree to be bound by its terms. I have received no promises, assurances, or guarantees from anyone as to the results that may be obtained by any medical treatment or services. If insurance coverage is insufficient, denied altogether, or otherwise unavailable, the undersigned agrees to pay all charges not paid by the insurer. |
|---|---|

| Patient/Authorized Representative Signature: <br><br> X _____ | Witness Signature and Title: <br><br> X _____ |
|---|---|
| If you are not the patient, please identify your Relationship to the patient. <br> (Circle or mark relationship(s) from list below): <br> Spouse       Parent       Legal Guardian <br> Neighbor/Friend     Sibling <br> Healthcare Power of Attorney <br> Other (please specify): _____ | Additional Witness Signature and Title: <br> (required for patients unable to sign without a representative or patients who refuse to sign) <br><br> X _____ <br><br><br> HCA Florida Conditions Of Admission English <br> 06.01.2011 |

Patient: HERRERA, MARISELA          MRN:          Encounter:               Page 6 of 6

Exhibit A

JFK MEDICAL CENTER
5301 S CONGRESS AVE
ATLANTIS FL 33462
BUSINESS OFFICE

HERRERA MARI

| ACCOUNT NUMBER | PATIENT NAME | STATEMENT PERIOD |
|---|---|---|
| ▮ | HERRERA MARISELA | EMERGENCY 04/09/13 TO 04/09/13 |

**STATEMENT DATE** PAGE 1 OF 1
05/22/13

| AMOUNT DUE |
|---|
| $6,940.80 |

HERRERA MARISELA
930 BIGNONIA RD
WEST PALM BEACH FL 33405

MAIL PAYMENT TO

JFK MEDICAL CENTER
02873
P.O. BOX 740771
CINCINNATI OH 45274-0771

TO VIEW/PAY YOUR ACCOUNT VIA INTERNET SEE THE WEB ADDRESS BELOW
TO RECEIVE PROPER CREDIT PLEASE RETURN THIS PORTION WITH YOUR PAYMENT
**NOTE: SHOULD YOU WISH TO PAY BY CREDIT CARD, SEE AUTHORIZATION NOTICE ON THE BACK.**

  

## SUMMARY OF ACCOUNT

JFK MEDICAL CENTER
5301 S CONGRESS AVE
ATLANTIS FL 33462
BUSINESS OFFICE

STATEMENT DATE   05/22/13

| STATEMENT PERIOD | PATIENT NAME | ACCOUNT NUMBER |
|---|---|---|
| 04/09/13 TO 04/09/13 | HERRERA MARISELA | ▮ |

THE INSURANCE CLAIMS OUTSTANDING REPRESENT OUR ESTIMATE OF INSURANCE LIABILITY BASED ON OUR BEST INFORMATION

| TOTAL CHARGES | NEW CHARGE ACTIVITY | NEW PAYMENTS OR CREDITS | NEW ACCOUNT ADJUSTMENTS | PREVIOUS TRANSACTIONS | INSURANCE CLAIMS OUTSTANDING | AMOUNT DUE |
|---|---|---|---|---|---|---|
| 20,656.00 | 0.00 | 8,551.20 | 5,164.00 | 0.00 | 0.00 | $6,940.80 |

| DATE | DESCRIPTION | UNITS | AMOUNT | DATE | DESCRIPTION | UNITS | AMOUNT |
|---|---|---|---|---|---|---|---|
| *04/09/13 | EMERGENCY SERVICES | | | *04/09/13 | KETOROLAC 30 MG INJ | 1 | 83.00 |
| *04/09/13 | CT HEAD/BRAIN W/O CONT | 1 | 6,404.00 | *04/09/13 | CT C-SPINE W/O CONTRAST | 1 | 5,900.00 |
| *04/09/13 | XR CHEST 1 V | 1 | 443.00 | *04/09/13 | XR T-SPINE 3 VIEWS | 1 | 2,222.00 |
| *04/09/13 | XR L-SPINE 4 + VIEWS | 1 | 3,359.00 | *04/09/13 | EKG TRACING ONLY | 1 | 462.00 |
| *04/09/13 | IVP SINGLE/INITIAL DRUG | 1 | 225.00 | *04/09/13 | EMER DEPT LEVEL 4 | 1 | 1,558.00 |
| | | | | | TOTAL CHARGES | | 20,656.00 |
| *05/20/13 | INS PMT ND LOCKBOX | | 8,551.20- | *04/09/13 | CONTRACTUAL ADJ CC | | 5,164.00- |
| | | | | | ACCOUNT BALANCE | | 6,940.80 |
| | | | | | DUE FROM PATIENT | | 6,940.80 |
| 04/15/13 | GEICO AUTO BILLED | | | | | | |

* INDICATES NEW ITEMS SINCE LAST STATEMENT

TO VIEW/PAY YOUR ACCT VIA WEB:  www.jfkmc.com/billing
IF YOU HAVE QUESTIONS REGARDING YOUR ACCOUNT  PLEASE CALL: 561-548-3620
BALANCE DUE IN FULL. PAY IMMEDIATELY.

AUTOMATED PHONE INQUIRY & PAYMENT 24HRS/DAY    SERVICE REP AVAILABLE 8 AM- 6PM
A FOR PROFIT TAX PAYING HOSPITAL LICENSED BY THE STATE OF FLORIDA ID# 62-1694180

THIS BILL IS FOR HOSPITAL SERVICES ONLY
PLEASE RETAIN THIS PORTION FOR YOUR RECORDS



ER
05/01/2013
FOPPE, MARK
FOPPE

JFK MEDICAL CENTER

SANCHEZ        LUZ
11/22/1947

### Conditions of Admission

**1. Consent to Treatment.** I consent to the procedures which may be performed during this hospitalization or on an outpatient basis, including emergency treatment or services, and which may include but are not limited to laboratory procedures, x-ray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered to me as ordered by my physician or other healthcare professional on the hospital's medical staff. I understand that as part of their training, students in health care education may participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and hospital staff.

**2. Financial Agreement.** In consideration of the services to be rendered to me, or to the patient for whom I am accepting responsibility, I individually promise to pay the patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account. Some special items will be priced separately if there is no price listed on the Charge Master, or if the charge is listed as zero. An estimate of the anticipated charges for services to be provided to the patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

The hospital will provide a medical screening examination as required to all patients who are seeking medical services to determine if there is an emergency medical condition, without regard to the patient's ability to pay. If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity. However, patients who do not qualify under the hospital's charity care policy or other applicable policy are not relieved of their obligation to pay for these services.

If supplies and services are provided to a patient who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from the undersigned will be determined by the terms of the governmental program or private health insurance plan. If the patient is uninsured and not covered by a governmental program, the patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment. I understand that I may request information about these programs from the hospital.

I also understand that, as a courtesy to me, the hospital may bill my insurance company, but is not obligated to do so. Regardless, I agree that except where prohibited by law, the financial responsibility for the services rendered belongs to me, the undersigned. I agree to pay any services that are not covered and covered charges not paid in full by my insurance company. This includes, but is not limited to, coinsurance, deductibles, non covered benefits due to policy limits or policy exclusions as well as failure to comply with insurance plan requirements. I also agree that if the hospital must initiate collection efforts to recover amounts owed by me, then in addition to amounts incurred for the services rendered I will pay, to the extent permitted by law: (a) any and all costs incurred by the hospital in pursuing collection, including, but not limited to, reasonable attorneys' fees, and (b) any court costs or other costs of litigation incurred by the hospital that applicable rules or statutes permit the hospital to recover.

Patient: SANCHEZ, LUZ DARY        MRN: ▮▮▮▮▮        Encounter: ▮▮▮▮▮▮▮        Page 1 of 6



ER
05/01/2013
FOPPE,MARK
FOPPE

JFK MEDICAL CENTER                    SANCHEZ        LUZ
                                      11/22/1947

**3. Consent to Wireless Telephone Calls.** If at any time I provide a wireless telephone number at which I may be contacted, I consent to receive calls (including autodialed calls and prerecorded messages)at that wireless number from the hospital, its successors and assigns, and the affiliates, agents and independent contractors, including servicers and collection agents, of each of them regarding the hospitalization, the services rendered, or my related financial obligations.

**4. Consent to Email Usage for Discharge Instructions.** If at any time I provide an email address at which I may be contacted, I consent to receiving discharge instructions at that email address from the hospital. These discharge instructions may include, but not be limited to: post-operative instructions, physician follow-up instructions, dietary information, prescription information.

**5. Consent to Photographs, Videotapes and Audio Recordings.** I consent to photographs, videotapes, digital or audio recordings, and/or images of me being recorded for security purposes and/or the hospital's healthcare operations purposes (e.g. quality improvement activities). I understand that the facility retains the ownership rights to the images and/or recordings. I will be allowed to request access to or copies of the images and/or recordings when technologically feasible unless otherwise prohibited by law. I understand that these images and/or recordings will be securely stored and protected. Images and/or recordings in which I am identified will not be released and/or used outside of the facility without a specific written authorization from me or my legal representative unless otherwise required by law.

**6. Release of Information.** I permit the hospital and the physicians or other health professionals involved in the inpatient or outpatient care to release healthcare information for purposes of treatment, payment or healthcare operations. Healthcare information regarding a prior admission(s) at other HCA affiliated facilities may be made available to subsequent HCA-affiliated admitting facilities to coordinate patient care for case management purposes. Healthcare information may be released to any person or entity liable for payment on the patient's behalf in order to verify coverage or payment questions, or for any other purpose related to benefit payment. Healthcare information may also be released to my employer's designee when the services delivered are related to a claim under worker's compensation. If I am covered by Medicare or Medicaid, I authorize the release of healthcare information to the Social Security Administration or its intermediaries or carriers for payment of a Medicare claim or to the appropriate state agency for payment of a Medicaid claim. This information may include, without limitation, history and physical, emergency records, laboratory reports, operative reports, physician progress notes, nurse's notes, consultations, psychological and/or psychiatric reports, drug and alcohol treatment and discharge summary. Federal and state laws may permit this facility to participate in organizations with other healthcare providers, insurers, and/or other health care industry participants and their subcontractors in order for these individuals and entities to share my health information with one another to accomplish goals that may include but not be limited to: improving the accuracy and increasing the availability of my health records; decreasing the time needed to access my information; aggregating and comparing my information for quality improvement purposes; and such other purposes as may be permitted by law. I understand that this facility may be a member of one or more such organizations. This consent specifically includes information concerning psychological conditions, psychiatric conditions, intellectual disability conditions, genetic information, chemical dependency conditions and/or infectious diseases including, but not limited to, blood borne diseases, such as Hepatitis, Human Immunodeficiency Virus (HIV) and Acquired Immune Deficiency Syndrome (AIDS).

Patient:SANCHEZ, LUZ DARY        MRN:▮▮▮▮        Encounter:▮▮▮▮▮▮        Page 2 of 6

JFK MEDICAL CENTER                              SANCHEZ        LUZ
                                                11/22/1947
ER
05/01/2013
FOPPE,MARK
FOPPE

7. Assignment of Benefits.  In executing this assignment of benefits, I am directing the health insurance carrier or other health benefit plan providing my coverage (including, but not limited to, any employer, employer group or trust sponsored or offered plan) to pay the hospital and/or hospital-based physicians directly for the services the hospital and/or hospital-based physicians provided to the patient during this admission.  If the insurance carrier providing my coverage fails to pay the hospital or hospital-based physicians directly, as they are hereby directed to do, I acknowledge that it is my duty and responsibility to immediately pay any such benefits received by me to the hospital or hospital-based physicians.  In return for the services rendered and to be rendered by the hospital and/or hospital-based physicians, I hereby irrevocably assign and transfer to the hospital and/or hospital-based physicians all right, title, and interest in all payments for the healthcare rendered, which are paid pursuant to any and all insurance policies and health benefit plans from which I am entitled to services or I am entitled to recover. I understand that any payment received from these policies and/or plans will be applied to the amount that I have agreed to pay for services rendered during this admission, as further described under section 2. I further hereby irrevocably assign and transfer to the hospital and/or hospital based physicians an independent, non-exclusive right of recovery against my insurer or health benefit plan, but this assignment shall not be construed as an obligation of the hospital and/or hospital based physicians to pursue any such right of recovery.  I acknowledge and understand that I maintain my right of recovery against my insurer or health benefit plan and the foregoing assignment does not divest me of such right. In no event will the hospital and/or hospital-based physicians retain benefits in excess of the amount owed to the hospital and/or hospital based physicians for the care and treatment rendered during the admission. If a third party payer (such as an insurance company or employer group or trust sponsored or offered plan) may be obligated to pay some or all of these charges, I agree to take all actions necessary to assist the hospital and/or hospital based physicians in collecting payment from any such third party payer should the hospital or hospital based physicians elect to collect such payment. In the event the hospital and/or hospital based physicians elect to exercise its independent, non-exclusive right of recovery against the patient's insurer or health plan,  I hereby appoint the hospital and/or hospital-based physicians as my authorized representative(s) to pursue,  any administrative remedies, claims and/or lawsuits on my behalf and at the  election of the hospital and/or hospital-based physicians, against any responsible third party, medical insurer, or employer sponsored medical benefit plan for purposes of collecting any and all hospital benefits due me for the payment of the charges referred to in section 2 above.  If the hospital and/or hospital-based physicians elect to pursue a claim or lawsuit against a third party payer as authorized representative, I agree to execute a special power of attorney, if requested, authorizing the hospital and/or hospital based physicians to take all actions necessary or appropriate in pursuit of such claim or lawsuit, including allowing the hospital to bring suit against the third party payer in my name.  I agree to pay over to the hospital and/or hospital-based physicians immediately all sums recovered in any claim or lawsuit brought on my behalf by the hospital and/or hospital-based physicians (up to the amount of the  charges of the hospital and/or hospital-based physicians,, plus expenses and attorney's fees).  I have read and been given the opportunity to ask questions about this assignment of benefits, and I have signed this document freely and without inducement, other than the rendition of services by the hospital and/or hospital based physicians.


*Hospital-based physicians include but are not limited to: Emergency Department Physicians, Pathologists, Radiologists, and Anesthesiologists, Psychiatrists, Psychologists or other Behavioral Health Providers. These services are rendered by independent contractors and are not part of your hospital bill.  These services will be billed for separately by each physician's billing company.


Patient:SANCHEZ, LUZ DARY              MRN:              Encounter:                    Page 3 of 6



ER
05/01/2013
FOPPE,MARK
FOPPE

JFK MEDICAL CENTER                SANCHEZ          LUZ
                                  11/22/1947

**8. Private Room.** I understand and agree that I or the party responsible for payment for hospital and medical services is responsible for any additional charges associated with the request and/or use of a private room.

**9. Communications About My Healthcare.** I authorize my healthcare information to be disclosed for purposes of communicating results, findings, and care decisions to my family members and others responsible for my care or designated by me. I will provide those individuals with a password or other verification means specified by the hospital.

**10. Medicare Patient Certification and Assignment of Benefit.** I certify that any information I provide in applying for payment under Title XVIII (Medicare) or Title XIX (Medicaid) of the Social Security Act is correct. I request payment of authorized benefits to be made on my behalf to the hospital or hospital-based physician by the Medicare or Medicaid program.

**11. Outpatient Medicare Patients.** Medicare does not cover prescription drugs except for a few exceptions. According to Medicare regulations, you are responsible for any drugs furnished to you while an outpatient that meet Medicare's definition of a prescription drug. These drugs are also referred to as self-administered drugs, as they are usually self-administered but they may be administered to you by hospital personnel. Medicare requires hospitals to bill Medicare patients or other third party payers for these drugs. Medicare Part D beneficiaries may submit a paper claim to the Medicare Part D Plan for possible reimbursement of these drugs in accordance with Medicare Drug Plan enrollment materials.

**12. Other Acknowledgements.**

    a. <u>Personal Valuables.</u> I understand that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss of or damage to any money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for the loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The liability of the hospital for loss of any personal property that is deposited with the hospital for safekeeping is limited to the greater of five hundred dollars ($500.00) or the maximum required by law, unless a written receipt for a greater amount has been obtained from the hospital by the patient. The hospital is not responsible for the loss or damage of cell phones, glasses or dentures or personal valuables unless they are placed in the hospital safe in accordance with the terms as stated above.

    b. <u>Weapons/Explosives/Drugs.</u> I understand and agree that if the hospital at any time believes there may be a weapon, explosive device, illegal substance or drug, or any alcoholic beverage in my room or with my belongings, the hospital may search my room and my belongings, confiscate any of the above items that are found, and dispose of them as appropriate, including delivery of any item to law enforcement authorities.

    c. <u>Additional Provision for Admission of Minors.</u> I, the undersigned, acknowledge and verify that I am the legal guardian or custodian of the minor/incapacitated patient.

    d. **<u>Legal Relationship Between Hospital and Physicians.</u> Most or all of the health care professionals performing services in the hospital are independent contractors and are not hospital agents or employees. Independent contractors are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent contractors.** I understand that physicians or other health care professionals may be called upon to

Patient:SANCHEZ, LUZ DARY          MRN:          Encounter:               Page 4 of 6



ER
05/01/2013
FOPPE,MARK
FOPPE

JFK MEDICAL CENTER                    SANCHEZ        LUZ
                                      11/22/1947

provide care or services to me or on my behalf, but that I may not actually see, or be examined by, all physicians or health care professionals participating in my care; for example, I may not see physicians providing radiology, pathology, EKG interpretation and anesthesiology services. I understand that, in most instances, there will be a separate charge for professional services rendered by physicians to me or on my behalf, and that I will receive a bill for these professional services that is separate from the bill for hospital services.

e. **Patient Visitation Rights.** I understand that I have the right to receive the visitors whom I or my support person designates, without regard to my relationship to these visitors. I also have the right to withdraw or deny such consent at any time. I will not be denied visitation privileges on the basis of race, color, national origin, religion, sex, gender identity, sexual orientation or disability. All visitors I designate will enjoy full and equal visitation privileges that are no more restrictive than those that my immediate family members would enjoy. Further, I understand that the hospital may need to place clinically necessary or reasonable restrictions or limitations on my visitors to protect my health and safety in addition to the health and safety of other patients. The hospital will clearly explain the reason for any restrictions or limitations if imposed. If I believe that my visitation rights have been violated, I or my representative has the right to utilize the hospital's complaint resolution system.

Patient:SANCHEZ, LUZ DARY        MRN:            Encounter:              Page 5 of 6

███████

ER
05/01/2013
FOPPE,MARK
FOPPE

JFK MEDICAL CENTER                    SANCHEZ      LUZ
                                      11/22/1947

I have been given the opportunity to read and ask questions about the information contained in this form as well as this section of the form, and I acknowledge that I either have no questions or that my questions have been answered to my satisfaction.

Acknowledge: _L S_____ (Initial)

## 13. Patient Self Determination Act.
I have been furnished information regarding Advance Directives (such as durable power of attorney for healthcare and living wills). I have also been furnished with written information regarding patient rights and responsibilities and other information related to my stay. Please initial or place a mark next to one of the following applicable statements:

| I executed an Advance Directive and have been requested to supply a copy to the hospital | I have not executed an Advance Directive, wish to execute one and have received information on how to execute an Advance Directive | I have not executed an Advance Directive and do not wish to execute one at this time  L S |
|---|---|---|

## 14. Notice of Privacy Practices.
I acknowledge that I have received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose my healthcare information for its treatment, payment, healthcare operations and other described and permitted uses and disclosures, I understand that I may contact the hospital Privacy Officer designated on the notice if I have a question or complaint. To the extent permitted by law, I consent to the use and disclosure of my information for the purposes described in the hospital's Notice of Privacy Practices.

Acknowledge: _L S ._ (Initial)

| Date: 5/1/13  Time: 11:47 | I, the undersigned, as the patient or legal agent of the patient, hereby certify I have read, and fully and completely understand this Conditions of Admission and Authorization for Medical treatment, and that I have signed this Conditions of Admission and Authorization for Medical Treatment knowingly, freely, voluntarily and agree to be bound by its terms. I have received no promises, assurances, or guarantees from anyone as to the results that may be obtained by any medical treatment or services. If insurance coverage is insufficient, denied altogether, or otherwise unavailable, the undersigned agrees to pay all charges not paid by the insurer. |
|---|---|
| **Patient/Authorized Representative Signature:**  X _(signature)_   If you are not the patient, please identify your Relationship to the patient. **(Circle or mark relationship(s) from list below):** Spouse          Parent          Legal Guardian Neighbor/Friend    Sibling Healthcare Power of Attorney Other (please specify):_____ | **Witness Signature and Title:** X _(signature)_ RN  **Additional Witness Signature and Title:** (required for patients unable to sign without a representative or patients who refuse to sign)  X_____  HCA Florida Conditions Of Admission English 06.01.2011 |

Patient:SANCHEZ, LUZ DARY         MRN: ███         Encounter: ███         Page 6 of 6

User: COH9751

# Financial Transaction Listing
## By Facility

06/07/2013
10:54 am

Facility: 02873     JFK MEDICAL CENTER

Patient: **SANCHEZ LUZ DARY**

| Facility | Acct Number | Entry Date | Trans Date | ProcCode | Type | Amount | Payer | Comment |
|---|---|---|---|---|---|---|---|---|
| 02873 | 67509764 | 05/02/2013 | 05/02/2013 | 116309 | 06 | $2,222.00 | | XR T-SPINE 3 VIEWS |
| 02873 | 67509764 | 05/02/2013 | 05/02/2013 | 116281 | 06 | $443.00 | | XR CHEST 1 V |
| 02873 | 67509764 | 05/02/2013 | 05/02/2013 | 13192 | 06 | $26.00 | | IBUPROFEN 400MG TAB |
| 02873 | 67509764 | 05/08/2013 | 05/02/2013 | 999999 | 05 | $-4,138.25 | | CONTRACTUAL ADJ CC |
| 02873 | 67509764 | 05/02/2013 | 05/01/2013 | 115435 | 06 | $6,404.00 | | CT HEAD/BRAIN W/O CONT |
| 02873 | 67509764 | 05/02/2013 | 05/01/2013 | 115453 | 06 | $5,900.00 | 52525 | CT C-SPINE W/O CONTRAST |
| 02873 | 67509764 | 05/02/2013 | 05/01/2013 | 124440 | 06 | $1,558.00 | | EMER DEPT LEVEL 4 |

Account Total: **$12,414.75**

Facility Total for 02873 - JFK MEDICAL CENTER

Report Total: **$12,414.75**

- CONFIDENTIAL -

This is the balance owing
as of today's date and may
not reflect all payments
and/or adjustments to the account.

Page 1 of 1

Filing # 17218279 Electronically Filed 08/18/2014 04:08:45 PM

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND
FOR HILLSBOROUGH COUNTY,
FLORIDA

CASE NO:

MARISELA HERRERA and LUZ SANCHEZ,
individually and on behalf of others similarly situated,

       Plaintiff,

v.

JFK MEDICAL CENTER LIMITED PARTNERSHIP
d/b/a JFK CENTER, and HCA HOLDINGS, INC.,

       Defendant.

_____/

## REQUEST FOR DIVISION ASSIGNMENT

     This is a request based on local Administrative Order(s) for the Clerk of the Court to assign the above styled case in the:

[xx] Tampa Division

[ ] East Division

[ ] Prior Division (Please indicate Case Number and Division of previously filed action:

_____

I understand that the actual division assignment will be in accordance with the Hillsborough County Administrative Orders. If there is not supported request for specific division assignment, this action will be assigned a division based on a random and equitable distribution system.

     Respectfully submitted,

     s/Theodore J. Leopold
     THEODORE J. LEOPOLD, ESQ.
     Florida Bar No.: 705608
     tleopold@cohenmilstein.com
     Cohen Milstein Sellers & Toll, PLLC
     2925 PGA Boulevard, Suite 200
     Palm Beach Gardens, FL  33410
     (561) 515-1400

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*