# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARISELA HERRERA, LUZ SANCHEZ,
NICHOLAS ACOSTA and PENNY
WOLLMEN,

       Plaintiffs,

v.                                                                  Case No: 8:14-cv-2327-T-30TBM

JFK MEDICAL CENTER LIMITED
PARTNERSHIP, *et al*.,

       Defendants.

_____

## <u>ORDER</u>

THIS CAUSE comes before the Court upon the Defendant HCA Holdings, Inc.'s

Motion Requesting Judicial Notice and Incorporated Memorandum of Law (Dkt. #34),

Defendant HCA Holdings, Inc.'s Motion to Dismiss Amended Complaint with Prejudice,

Motion to Strike Class Allegations, and Joinder in Hospital Defendants' Motion to Dismiss

and Motion to Strike, with Incorporated Memorandum of Law (Dkt. #35), Plaintiffs'

Response in Opposition to the Motion (Dkt. #44), JFK Limited Center Partnership d/b/a

JFK Medical Center, Memorial Healthcare Group, Inc. d/b/a Memorial Hospital

Jacksonville, and North Florida Regional Medical Center, Inc.'s Motion to Dismiss and

Motion to Strike and Supporting Memorandum of Law (Dkt. #36), and Plaintiffs' Response

in Opposition to the Motion (Dkt. #45). Upon review and consideration, it is the Court's

conclusion that the Motion Requesting Judicial Notice should be granted and the remaining Motions should be granted in part and denied in part.

## *Background*

Plaintiffs Marisela Herrera, Luz Sanchez, Nicholas Acosta, and Penny Wollmen filed this putative class action against Defendants HCA Holdings, Inc. (hereinafter "HCA") and JFK Medical Center Limited Partnership d/b/a JFK Medical Center (hereinafter "JFK"), Memorial Healthcare Group, Inc., d/b/a Memorial Hospital Jacksonville (hereinafter "Memorial"), and North Florida Regional Medical Center, Inc. (hereinafter "North Florida") (collectively the "Defendant Hospitals") alleging that they charge unreasonable amounts for emergency radiological services.   HCA removed this case to this Court alleging jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) and § 1453.

Plaintiffs were patients at the HCA-operated Defendant Hospitals in Florida and received emergency radiological services, including CT scans, X-rays, MRIs, and ultrasounds. The services were covered by their Personal Injury Protection ("PIP") insurance.   When Plaintiffs were admitted to the Defendant Hospitals, they signed Conditions of Admission contracts (hereinafter the "Contracts"). The Contracts contain a paragraph titled "Financial Agreement" which provides that the patient or the patient's guarantor:

> promises to pay the patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account. Some special items will be priced separately if there is no

price listed on the Charge Master…. An estimate of the anticipated charges for services to be provided to the patient is available upon request from the hospital.   Estimates may vary significantly from the final charges based on a variety of factors, including but not limited to the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

Herrera alleges that JFK billed $5,900 for the CT scan of her spine; $6,404 for the CT scan of her brain; $3,359 for the lumbar spine X-ray; and $2,222 for the thoracic spine X-ray. Sanchez alleges that JFK billed $5,900 for the CT scan of her spine; $6,404 for the CT scan of her brain; and $2,222 for the thoracic spine X-ray. Acosta alleges that Memorial billed $6,965 for the CT scan of his spine; and $6,277 for the CT scan of his brain. Wollmen alleges that North Florida billed $6,853 for the CT scan of her cervical spine; $6,140 for the CT scan of her brain; and $1,454 for the X-ray of her thoracic spine.

Plaintiffs allege that the charges for these emergency radiological services are up to 65 times higher than the charges for the same services billed to other patients covered under private or government sponsored insurance programs. The charges are so excessive that they prematurely exhausted the PIP insurance benefits depriving Plaintiffs of coverage for other medical services and leaving them with medical expenses in excess of what they would otherwise have to pay.

Plaintiffs allege causes of action for violation of the Florida Deceptive Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq*., breach of contract, and breach of implied covenant of good faith and fair dealing. Plaintiffs bring this putative class action on behalf of:

3

…similarly situated individuals who received PIP-covered emergency care radiological services at HCA-operated facilities in Florida who either (a) were billed by the facility for any portion of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services, and as a result, were billed for additional medical services rendered by the facility and/or third party providers that would otherwise have been covered under PIP.

Plaintiffs previously filed a Motion for Class Certification and Request for Stay of Briefing and Consideration of this Motion and Incorporated Memorandum of Law (Dkt. #3) on the basis that Defendants could pre-empt class certification by making offers of judgment to the Plaintiffs. The Court denied that motion as premature.

## *Discussion*

### I. **Motion to Dismiss Standard**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Alabama,* 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank,* N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (internal citations and quotations omitted). "A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8; *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, exhibits are part of a pleading "for all purposes." Fed.R.Civ.P. 10(c); *see Solis–Ramirez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir. 1985) (*per curiam*) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.").

On a motion to dismiss, the Court may consider matters judicially noticed. *La Grasta v. First Union Sec. Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). These matters include documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *SFM Holdings. Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

## II.    Motion for Judicial Notice

HCA filed its Motion for Judicial Notice requesting that the Court take judicial notice of the following documents: Certificate of Incorporation (DE) of HCA, Certificate of Limited Partnership (DE) – JFK, Articles of Incorporation (FL) - Memorial, Articles of Incorporation (FL) - North Florida, HCA's Form 10-K for Fiscal Year 2013, JFK's application and renewals (FL) re: fictitious name, Memorial's application and renewals (FL) re: fictitious name, North Florida's application and renewals (FL) re: fictitious name,

JFK – Agency for Healthcare Administration ("AHCA") License, Memorial - AHCA License, North Florida - AHCA License, Webpage, "Healthy Work Environment", and Webpage, "Pricing and Financial Information". These documents are filed in support of its Motion to Dismiss. Plaintiffs do not object to the Motion. The Court grants the Motion and will take judicial notice of the attached documents.

### III.    The Motions to Dismiss

HCA argues that since it is the ultimate parent company of the Defendant Hospitals it has no direct liability for the Defendant Hospitals' actions. Plaintiffs fail to allege a single action or inaction taken by HCA, nor do they allege any other basis for disregarding the corporate form rendering HCA liable for the alleged acts of the Defendant Hospitals. Ultimately, it argues that Plaintiffs' allegations do not state a cause of action under an alter-ego theory, agency theory, or direct liability theory. Further, it argues that Plaintiffs' FDUTPA claims fail because Plaintiffs did not and cannot allege that HCA was engaged in "trade or commerce" as required by the statute. Further, the breach of contract and breach of covenant of good faith and fair dealing claims do not state a cause of action because HCA is not a party to the Contracts.

The Defendant Hospitals argue that the Amended Complaint fails to state a claim for violation of the FDUTPA because Plaintiffs do not allege any "deceptive" or "unfair" conduct by the Defendant Hospitals. They also fail to allege breach of contract and breach of the implied covenant of good faith and fair dealing because Plaintiffs do not allege the Defendant Hospitals breached any of the express provisions in the Contracts.

### IV.    Parent-Subsidiary Liability

The Court finds *In re Managed Care Litigation* instructive on this issue . 298 F. Supp. 2d 1259 (S.D. Fla. 2003). Plaintiffs in that case brought a class action suit alleging ten separate causes of action against a parent company and its subsidiary hospitals based on their improper billing practices with respect to radiological services. Plaintiffs in that case also alleged that the parent company implemented the policy and instructed the subsidiary hospitals to carry out the practice.   The court held that the plaintiffs sufficiently pled a cause of action for direct liability of the parent corporation where they alleged that "all of the substantive practices, policies, and procedures of the Defendants' health plans are established, implemented, monitored, and ratified by the Defendants *themselves*." *Id.* at 1309.

The Court finds this reasoning persuasive. Plaintiffs' allege, among other things, that:

> HCA is directly involved in setting and enforcing hospital guidelines and is specifically involved in the billing practices of these hospitals…. all HCA-owned and operated Florida hospitals, medical centers, and surgical centers, including Defendant Hospitals, acted as the agents of Defendant HCA and acted in the course and scope of their agency and were acting with the consent, permission, authorization, satisfaction, and knowledge of HCA, which ratified and approved of the actions of its hospitals, medical centers, and surgical centers.

The Court will permit Plaintiffs to proceed with its claims against HCA. *See also Jackam v. Hosp. Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577 (11th Cir. 1986) (allegations that parent company established policies that subsidiary corporation executed as parent company's agent sufficiently stated cause of action, based on agency theory, to hold parent corporation

directly liable for subsidiary corporation's alleged breach of contract); *Teytelbaum v. Unum Group*, 8:09-CV-1231-T-33TBM, 2010 WL 4689818 at *1 (M.D. Fla. Nov. 11, 2010) (stating that it was a "fact intensive inquiry whether the parent company could be responsible for its subsidiary's breach of contract, and in any event, plaintiff alleged that both acting together caused the injuries.) Therefore, the Court denies HCA's motion to dismiss on this basis.

## V.   FDUTPA

In Count I of the Amended Complaint, Plaintiffs allege that Defendants violate the FDUTPA by using the unfair practice of charging unreasonable rates for PIP-covered radiological services following motor vehicle accidents. Plaintiffs' argue that the Defendants' actions are also deceptive because they conceal, or at a minimum do not disclose, their practice of charging the unreasonable prices to PIP-insured patients. Plaintiffs further allege that the Defendants "require emergency care patients, including Plaintiffs and the putative Class members, to sign contracts of adhesion that purport to expressly incorporate Defendants' Charge Master price list, but fail to contain a list of the Charge Master prices or otherwise provide notification of what the amounts of those prices are."

FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a FDUTPA claim, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).

"The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.' " *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt.*, Inc., 842 So. 2d 773, 777 (Fla. 2003)). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (internal quotation marks omitted). Under the FDUTPA , trade or commerce is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

The Defendants argue that the Contracts expressly incorporate the Charge Master as the contractual price term. Since this information is readily apparent on the face of the Contracts, it negates Plaintiffs' contention that the Defendant Hospitals materially deceived them about the charges. Further, Plaintiffs do not allege that they ever requested copies of the Defendant Hospitals' price list. Defendants point to Section 395.301(1), Florida Statutes, which requires hospitals to "notify each patient during admission and at discharge of his or her right to receive an itemized bill upon request." The statute further provides that hospitals must provide a good faith estimate of reasonably anticipated charges upon request for nonemergency medical services only.   The Defendant Hospitals notify

patients of this right in the Contracts, and therefore maintain that they have met their obligation under the statute.

The Court has serious doubts that the Defendant Hospitals' practice of incorporating the Charge Master into the Contracts by reference rises to the level of unfairness and deception as contemplated by the FDUTPA. Nonetheless, the Court will give Plaintiffs an opportunity to prove their case recognizing that other courts have held that these types of allegations support a FDUTPA claim. *See Urquhart v. Manatee Mem'l Hosp.*, 8:06-cv-1418T-17EAJ, 2007 WL 781738, at \*5 (M.D. Fla. Mar. 13, 2007) (although ultimately dismissing the FDUTPA claim because plaintiff failed to allege an injury, stating that uninsured plaintiff could allege an unfair practice under the FDUTPA in a case filed against a hospital and its parent corporation based on policy of charging objectively unreasonable prices); *Colomar v. Mercy Hosp., Inc.*, 461 F.Supp. 2d 1265, 1268 (S.D. Fla. 2006) (allegations of hospital's unreasonable pricing supported cause of action for an unfair practice under the FDUTPA). The Court denies HCA and the Defendant Hospitals' motions to dismiss Count I of the Amended Complaint and will revisit this issue at summary judgment.

## VI. Breach of Contract

In Count II of their Amended Complaint, Plaintiffs allege a breach of contract based on incorporation of the PIP statute into the Contracts as a matter of Florida law. The PIP statute mandates that "[a]… hospital, … lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance *may charge the insurer and injured party only a reasonable amount* pursuant to this section for the services and

supplies rendered. . . . such a charge may not exceed the amount the person or institution customarily charges for like services or supplies." Fla. Stat. § 627.736(5)(a) (emphasis added).

Section 627.736(5)(a) further provides that:

> [i]n determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

Plaintiffs allege that the Defendants breached the Contracts because they charged unreasonable rates. Further, Plaintiffs were not provided a copy of the Charge Master at the time of admission. Based on the foregoing, Plaintiffs argue that the Contracts contain a "vague, ambiguous, undefined, and nondescript pricing term," which "implies a contractual obligation on Plaintiffs to pay no more than the reasonable value [of the] services provided under the Contracts, and a corresponding obligation on Defendants to bill for no more than the reasonable value of the services provided under the Contracts."

Plaintiffs rely on *Florida Beverage Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation*, for the proposition that the PIP statute is incorporated into the Contracts. 503 So. 2d 396, 398 (Fla. 1st DCA 1987) ("The laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it."). Therefore, Plaintiffs argue that since the PIP statute requires that hospitals charge a reasonable rate, that obligation is an "express term" of the

Contracts which Defendants violated. At oral argument, the Plaintiffs explicitly stated that they are not proceeding under an adhesion contract theory.

Defendants first argue that the PIP statute should not be incorporated into the Contracts because it only provides a remedy to PIP insurers to challenge the reasonableness of the charges. Specifically, the statutory scheme provides that insurers can either pay a percentage of the hospital's "usual and customary charges" or dispute the reasonableness of the charges and submit the matter to a fact-finder.   Further, Defendants argue, the PIP statute provides the insured only one private cause of action; a claim against the insurer for benefits owed.

To the extent that the Court does read the PIP statute into the Contracts, the Defendant Hospitals maintain that the PIP statute's reasonableness requirement is not in conflict with the Charge Master rates, because it reflects their usual and customary charges. Therefore, according to the Defendant Hospitals, their usual and customary charges are the upper limit of what is reasonable. Any differential in the charges are due to discounted rates negotiated by private insurance companies or mandated by the government under its Medicaid or Medicare programs.

The general doctrine regarding incorporation of statutes is that "where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract." *Citizens Ins. Co. v. Barnes*, 98 Fla. 933, 124 So. 722, 723 (1929). *See also Weldon v. All Am. Life Ins. Co.*, 605 So. 2d 911, 914 (Fla. 2d DCA 1992) (applying the general principle to determine the extent to which a

chiropractor's services were covered under an insurance policy). PIP coverage is highly regulated by a comprehensive statutory scheme. *See Custer Med. Center v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1089 n.1 (Fla. 2010) ("PIP insurance is markedly different from homeowner's/tenants insurance, property insurance, life insurance, and fire insurance, which are not subject to statutory parameters and are simply a matter of contract not subject to statutory requirements.").

The Southern District of Florida and various Florida state courts have held that allegations that a hospital charged unreasonable rates for its services support a breach of contract claim. *See Colomar*, 461 F. Supp. 2d 1265 (allegations that patients with insurance and government benefits received significant discounts in price they paid for hospital's services supported plaintiff's claim for breach of contract for unreasonable pricing); *Payne v. Humana Hospital*, 661 So. 2d 1239 (Fla. 1st DCA 1995) (reversing dismissal of putative class action suit premised on unreasonable rates charged by a hospital even though contract required the payment of "prevailing rates" and "regular charges," but did not "express prices within the four corners of the document." The court described the charge master as a "complicated and unobtainable master charge list containing hundreds of items"); *Mercy Hospital v. Carr*, 297 So. 2d 598 (Fla. 3rd DCA 1974) (holding that although plaintiff was liable for medical services rendered he was not bound by the amount of the charges listed in the admission contract as he was entitled to question the reasonableness of the charges).

In this case, the PIP statute imposes a duty on hospitals to charge a reasonable price to PIP patients for medical services. Although the statute explicitly provides a remedy to insurers to challenge the charges under its particular statutory scheme, it does not preclude

an insured from also challenging the reasonableness of the charges. Further, to the extent that Florida law permits hospitals to use a "charge master," the prices listed within it must still be reasonable.

Contrary to the Defendants' argument, even if the charges do not exceed the usual and customary charges for like services or supplies, the charges are not automatically reasonable. The statute itself provides guidance on determining the reasonableness of a specific charge, and includes other factors such as payments accepted by the hospital and charges within the community. *See* Fla. Stat. § 627.736(5)(a).   Further, the Court rejects the argument that a PIP insurer's decision to pay a percentage of the billed charges implies that the insurer finds the charges reasonable. An insurer's business decision to pay rather than litigate does not preclude the patient from challenging the reasonableness of the charges, particularly when the patient is responsible for a percentage of those charges.

Therefore, the Court concludes that Plaintiffs may proceed with a breach of contract claim which incorporates the PIP statute's reasonableness requirement into the Contracts.   Plaintiffs will have the opportunity to prove that the Defendant Hospitals' rates are unreasonable. The Court denies HCA and the Defendant Hospitals' motions to dismiss Count II of Plaintiffs' Amended Complaint.

## VII.   Breach of Covenant of Good Faith and Fair Dealing

In Count III of the Amended Complaint, Plaintiffs allege that the Defendants breached their duty of good faith and fair dealing by charging them unreasonable rates for medical services. Defendants maintain that Plaintiffs may not properly make this claim because they did not allege that Defendants breached an express term in the Contracts.

Florida contract law recognizes the implied covenant of good faith and fair dealing. *Anthony Distribs. v. Miller Brewing Co*., 941 F.Supp. 1567, 1574 (M.D. Fla. 1996). However, "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." *Id*. Essentially, any claim of breach of the implied covenant of good faith and fair dealing is really a breach of contract claim, and "no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999). Accordingly, HCA and the Defendant Hospitals' motions to dismiss Count III of Plaintiffs' Amended Complaint for failure to state a claim is granted.

### VIII.    Motions to Strike Class Allegations

HCA and the Defendant Hospitals move to strike the class allegations because individual issues predominate, Plaintiffs lack standing to assert claims on behalf of patients treated at facilities other than those operated by the Defendant Hospitals and the geographic diversity and dispersion of the facilities preclude class treatment.

Although a plaintiff will typically move for class certification, the complaint's class action allegations create a court's "independent obligation to decide whether an action was properly brought as a class action, even where ... neither party moves for a ruling on class certification." *Martinez–Mendoza v. Champion Intern. Corp*., 340 F.3d 1200, 1216 n. 37 (11th Cir. 2003) (citing *McGowan v. Faulkner Concrete Pipe Co*., 659 F.2d 554, 559 (5th Cir. Unit A 1981). *See also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,

15

755 F.Supp. 2d 1205, 1207 (M.D. Fla. 2010) (Moody, J.) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification."). Therefore, it is appropriate to review the class allegations at this juncture to determine whether a class may stand.

Given the nature of the claims and individual factual inquiries required, it is clear the individualized issues are predominant and this suit cannot proceed as a class action. Individualized money claims belong in Rule 23(b)(3) class action suits. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2558 (2011). The standard for a 23(b)(3) suit is "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

In this case, the threshold inquiry is whether the Plaintiffs were charged an unreasonable rate for their specific medical service, which would affect the portion of their PIP benefits prematurely depleted and the portion of the charge for which they were individually responsible. If this case were to proceed, the most important issue to settle, the reasonableness of the charge for the specific radiological service and the damages incurred by each putative plaintiff, would be highly individualized in nature. What is a reasonable charge for radiological services in one geographical area may not be reasonable for another.

Further, for those class members whose PIP benefits were completely depleted by the Defendant Hospitals' allegedly unreasonable charges, the Plaintiffs seek reimbursement for any payments made to third party providers that would have been

16

covered by their PIP coverage. In those cases, the Court would have to analyze whether each Plaintiff had co-insurance which should have covered those expenses, whether the medical services were reasonable and necessary and related to the motor vehcile accident so that the PIP coverage would apply, and given the allegations in this case, whether the third party provider's charges are "reasonable." After consideration of these factors, the Court's calculation of what constitutes a "reasonable amount" weighs strongly against the use of a class action. *MRI Associates of St. Pete, Inc*., 755 F. Supp. 2d at 1208 (finding that action for PIP benefits requiring the court to determine what constituted a "reasonable amount" was inappropriate for a class action proceeding) (citing *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. 2d DCA 2002)).

The Eleventh Circuit is clear on this issue. When "significant individualized issues with respect to breach, materiality, and damages" exist, plaintiff cannot satisfy the predominance element required for class certification. *Vega v. T-Mobile USA,* Inc., 564 F.3d 1256, 1274 (11th Cir. 2009). *See also Shenandoah Chiropractic, P.A. v. National Specialty Insurance Company*, 526 F. Supp. 2d 1283 (S.D. Fla. 2007) (striking class allegations based on breach of contract claim under PIP statute). Since the individual factual inquiries will predominate in this litigation, making any sort of class litigation highly impractical, the class allegations will be stricken. *See Vandenbrink v. State Farm Mut. Auto. Ins. Co*., 8:12-CV-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (Moody, J.) (striking class allegations where individual issues predominated.)

*Conclusion*

Plaintiffs' allegations are minimally sufficient to plead a cause of action under the FDUTPA, and are sufficient to support a breach of contract action against all Defendants. However, there is no independent cause of action for breach of implied covenant of good faith and fair dealing.   Because Plaintiffs' allegations clearly require a highly individualized analysis of the damages issue, precluding class treatment, the Court need not determine Plaintiffs' Article III standing.

It is therefore **ORDERED AND ADJUDGED** that:

1.    Defendant HCA Holdings, Inc.'s Motion Requesting Judicial Notice and Incorporated Memorandum of Law (Dkt. #34) is GRANTED.

2.    Defendant HCA Holdings, Inc.'s Motion to Dismiss Amended Complaint with Prejudice, Motion to Strike Class Allegations, and Joinder in Hospital Defendants' Motion to Dismiss and Motions to Strike, with Incorporated Memorandum of Law (Dkt. #35) is GRANTED in part.

3.    JFK Limited Center Partnership d/b/a JFK Medical Center, Memorial Healthcare Group, Inc. d/b/a Memorial Hospital Jacksonville, and North Florida Regional Medical Center, Inc.'s Motion to Dismiss and Motion to Strike and Supporting Memorandum of Law (Dkt. #36) is GRANTED in part.

4.    The Court dismisses Count III of the Amended Complaint.

5.    The Court strikes Plaintiffs' class allegations.

6.      Marisela Herrera may proceed with this action. The remaining Plaintiffs are

dismissed without prejudice and may file separate individual actions.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of February, 2015.


_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2014\14-cv-2327 mtd 35 36.docx