# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

---

MARISELA HERRERA and NICOLAS
ACOSTA, individually and on behalf of others
similarly situated,

      Plaintiffs,

      v.

JFK MEDICAL CENTER LIMITED
PARTNERSHIP d/b/a JFK MEDICAL
CENTER; MEMORIAL HEALTHCARE
GROUP INC., d/b/a MEMORIAL HOSPITAL
JACKSONVILLE; and HCA
MANAGEMENT SERVICES, L.P.,

      Defendants.

CASE NO: 8:14–cv–2327–JSM–TBM

---

**DECLARATION OF DOUGLAS J. MCNAMARA IN SUPPORT OF UNOPPOSED**
**MOTIONS FOR FINAL APPROVAL OF SETTLEMENT,**
**CERTIFICATION OF SETTLEMENT CLASS,**
**AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

    I, Douglas J. McNamara, declare:

    1.  I am admitted *pro hac vice* in the above captioned case. I was admitted to the legal practice in 1996. I am Of Counsel at Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), where I have worked since 2001. I make this declaration upon personal knowledge as the lead attorney for Cohen Milstein in this action.

    2.  I, along with other attorneys at Cohen Milstein, have litigated hundreds of class actions, as described, in part, in the firm resume attached as Exhibit 3 to Plaintiffs' Unopposed

1

Motion to Conditionally Certify Class, Preliminarily Approve Settlement, Approve Class Notice, and Set Fairness Hearing. *See* ECF No. 302-3.

    3. Cohen Milstein acted as Lead Counsel in this case and worked in coordination with other Plaintiffs' counsel. My firm worked on virtually every aspect of this litigation. Among the tasks undertaken by my firm were: (1) conducting an extensive factual investigation into the case; (2) drafting three complaints; (3) successfully opposing Defendants' motions to dismiss; (4) successfully appealing the district court's striking of Plaintiffs' class allegations at the Eleventh Circuit; (5) reviewing and analyzing tens of thousands of documents; (6) taking fact depositions of seven employees of the Defendants and their affiliated companies; (7) defending four plaintiff depositions; (8) interviewing and preparing Plaintiffs' two expert witnesses; (9) defending depositions of Plaintiffs' two expert witnesses; (10) drafting nine motions to compel; (11) drafting the motion for class certification, (12) arguing at hearings on various motions, including the motion to dismiss hearing, and hearings on motions to compel; (13) conducting settlement negotiations, including participating in an all-day in-person mediation session; (14) successfully moving for preliminary approval of the settlement and conditional certification, and (15) reviewing settlement materials.

    **Complaint, Motion to Dismiss, and Appeal to Eleventh Circuit**

    4. On August 18, 2014, Cohen Milstein filed the initial complaint in this action in Florida state court. The complaint alleged that Defendants, and other Florida hospitals and entities related to HCA Healthcare, Inc., violated Florida law by charging Florida Personal Injury Projection ("PIP") patients unreasonably high amounts for radiological services at hospital emergency rooms. The complaint alleged that Defendants' actions were in violation of Florida's Unfair and Deceptive Trade Practices Act (FDUTPA) because the Florida PIP statute proscribed

medical providers from charging PIP patients unreasonably higher rates compared to similarly situated patients. Fla. Stat. Sec. 627.736(5).

5. On September 17, 2014, Defendants removed this action to the United States District Court for the Middle District of Florida. *See* ECF No. 1.

6. On October 15, 2014, Plaintiffs filed an Amended Complaint. *See* Amended Complaint, ECF No. 24.

7. On November 24, 2014, Defendants filed a motion to dismiss Plaintiffs' Amended Complaint and to strike the class allegations. *See* ECF Nos. 35-36. On February 20, 2015, this Court struck Plaintiffs' class allegations, but held that Plaintiffs could proceed on an individual basis on their FDUTPA and breach of contract claims. *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 87 F. Supp. 3d 1299, 1301 (M.D. Fla. 2015), *rev'd and remanded*, 648 F. App'x 930 (11th Cir. 2016).

8. Plaintiffs appealed the District Court's ruling to the Eleventh Circuit. On April 26, 2016, that court reversed the decision to strike the class allegations, and remanded the case so that Plaintiffs could conduct discovery before a ruling on class certification. *Herrera v. JFK Med. Ctr. Ltd. P'ship,* 648 Fed. App'x. 930, 935 (11th Cir. 2016).

**Class Discovery**

9. On June 22, 2016, this Court provided an amended scheduling order, and required that discovery be bifurcated between class discovery and merits discovery. ECF No. 82. Class discovery proceeded from June 2016 to September 2017.

10. During class discovery, Plaintiffs' Counsel reviewed tens of thousands of documents

3

produced by Defendants, including documents related to how Florida HCA-Affiliated Hospitals[1] set their chargemaster[2] prices and reimbursement rates with private insurance companies for emergency services; how Florida HCA-Affiliated Hospitals determine the amount to charge patients covered by PIP compared to other patients; and Florida HCA-Affiliated Hospitals' uninsured discount policies. Plaintiffs' Counsel also served Rule 45 subpoenas on ten third party insurance companies, and reviewed documents produced in response to those subpoenas.

11. During class discovery, Named Representatives Marisela Herrera and Nicolas Acosta and two Former Named Representatives (Luz Sanchez and Penny Wollmen) each produced dozens of documents, including documents containing their confidential medical information.

12. The parties conducted eleven fact depositions. Defense Counsel deposed the two Named Representatives, Marisela Herrera and Nicolas Acosta, and two former Named Representatives, Luz Sanchez and Penny Wollmen. Plaintiffs' Counsel attended and defended the Named Representatives and Former Named Representative at their four depositions. Plaintiffs' Counsel deposed seven employees of Defendants or companies affiliated with Defendants.

13. Plaintiffs filed nine motions to compel during class discovery. *See* ECF Nos. 92; 115; 119; 136; 147; 185; 203; 195; 226. This included moving to obtain information from HCA Management Services, LP employees.  Most of the documents produced by Defendants in this

---

[1] As defined in the settlement agreement, Florida HCA-Affiliated Hospitals are hospitals "that (1) operate in the state of Florida and are licensed under Florida Statute, Chapter 395, (2) operate an Emergency Department, and (3) are owned by an indirect subsidiary of HCA Holdings, Inc. (n/k/a HCA Healthcare, Inc.)." *See* ECF No. 302-1, Settlement Agreement, at § II.12. The Florida HCA-Affiliated Hospitals as of the date of this declaration are listed in Exhibit C to the settlement agreement.

[2] As defined in the settlement agreement, a chargemaster is "the unique price list maintained by hospitals, which includes the medical services offered by the hospital and the charge for each medical service." *See* ECF No. 302-1, Settlement Agreement, at § II.2.

litigation were produced in response to Magistrate Judge Thomas McCoun's orders on Plaintiffs' motions to compel.

### Class Certification and Experts

14. On October 27, 2017, Plaintiffs filed their Motion for Class Certification, along with two expert reports. Class Counsel ultimately determined that class certification pursuant to Rule 23(b)(3) was problematic due to difficulties in creating a class-wide damage model. Class Counsel moved for class certification pursuant to Rule 23(b)(2) and sought solely injunctive relief.

15. Class Counsel contended that injunctive relief was appropriate because HCA-Affiliated Florida Hospitals employed a general policy of seeking to collect more from PIP patients (75% of the chargemaster prices) compared to similarly situated emergency room patients who were uninsured (█% of the chargemaster) or those whose primary insurer was one of the large private health insurers (on average, about █% of the chargemaster). ECF No. 252, at 3-6.

16. Plaintiffs' two expert reports were written by Dr. Ge Bai and Kevin McCarty. Dr. Bai is a professor of accounting at Johns Hopkins Carey Business School who researches health care accounting and finance. Dr. Bai provided a methodology designed to determine a geographically-tailored reasonable price for a medical service. Dr. Bai then analyzed charges for radiological medical services for Florida PIP Insurance companies and patients provided from a sample of Florida HCA-Affiliated Hospitals' emergency departments, and opined whether those charges were reasonable. Kevin McCarty is the former Florida Insurance Commissioner. He testified about the meaning of the term "usual and customary" in the context of the Florida health

insurance industry. Defendants deposed Dr. Ge Bai on October 31, 2017 in Washington, DC. Defendants deposed Kevin McCarty on November 17, 2017 in Tallahassee, Florida.

17. On December 1, 2017, Defendants filed briefs in opposition to Plaintiffs' Motion for Class Certification, along with an expert report submitted by Michael Heil. On December 14, 2017, the parties requested a stay of the litigation while the parties engaged in settlement mediation. The Court granted the requested stay.

**Settlement Negotiations and Agreement**

18. On March 5, 2018, the parties attended a full-day mediation session in New York City with mediator, Hon. Layn Phillips (ret.). Aided by the mediator, the parties discussed the potential contours of a settlement, but the session did not result in a settlement. Settlement discussions continued for several months after the mediation session via email and teleconference.

19. On May 3, 2018, the Hon. Layn Phillips (ret.) made a mediator's proposal.

20. All parties accepted the mediator's proposal on May 5, 2018.

21. As memorialized in the parties' settlement agreement ("Agreement"), the Settlement Class includes "all Persons (1) who receive medical services in the Emergency Department of a Florida HCA-Affiliated Hospital from the Effective Date of this Settlement through the end of the fourth (4th) year after the Effective Date of this Settlement, (2) whose Florida PIP Insurance pays for a portion of the medical services rendered by the Florida HCA-Affiliated Hospital, (3) who lack secondary insurance applicable to the medical services received from the Florida HCA-Affiliated Hospital or a personal injury settlement related to the accident that caused the Person to receive the applicable medical services, and (4) who have a remaining balance after their Florida PIP Insurance pays the Florida HCA-Affiliated Hospital. The Settlement Class does not

include the judge to whom this case is assigned, any member of the judge's immediate family, and the judge's staff and their immediate families." *See* ECF No. 302-1, Settlement Agreement, at § II.23.

22. The Settlement Class will include thousands of Floridians. Between 2014 and 2016, approximately 18,000 patients with Florida auto insurance received emergency services from Florida HCA-Affiliated Hospitals and had no secondary insurance.

23. As memorialized in the Agreement, the new PIP Discount will be at least 85% of Settlement Class Members' bills. ECF No. 302-1, Settlement Agreement, at § II.19.

24. The settlement relief is entirely injunctive. The Agreement does not require Defendants to make any payments to Settlement Class Members for monetary damages.

25. Only after the acceptance of the mediator's proposal did the parties discuss the payment of attorneys' fees and expenses and plaintiff service payments.

26. After negotiations over the course of two months, on July 2, 2018, the parties reached agreement that Plaintiffs could request up to $3,000,000 in attorneys' fees and costs, and Plaintiffs could seek up to $ 6,000 in service payments for each named Plaintiff.

**Settlement Considerations**

27. Plaintiffs' Counsel reached the settlement agreement only after conducting extensive discovery, briefing class certification, and engaging in lengthy settlement negotiations. Plaintiffs' Counsel scrutinized the strengths and weaknesses of their case and believe it is fair, reasonable and adequate to the Settlement Class. Among the salient factors that Plaintiffs' Counsel considered in deciding to agree to the settlement:

A. The proposed settlement provides Settlement Class Members with relief consistent with the opinion provided by Plaintiffs' expert, Dr. Ge Bai, that a reasonable charge for patients

7

treated at Florida HCA-Affiliated Hospitals would be approximately 20% of what PIP patients were expected to pay;

B. The Agreement will require that the Florida HCA-Affiliated Hospitals provide at least an 85% discount to Settlement Class Members. Settlement Agreement at § II.19. Thus, during the Class Period, Settlement Class Members will be required to pay no more than 15% of what they would have been asked to pay absent the PIP discount. Consistent with Plaintiffs' cause of action, these PIP patients will not be expected to pay disproportionately higher rates than other patients;

C. The size of the combined discounts required by the settlement agreement during the class period will be tremendous. Plaintiffs project that the settlement will provide approximately $220 million in discounts to the Settlement Class' future medical bills. The Florida HCA-Affiliated Hospitals provided approximately $ 55 million in discounts to PIP patients in 2016 due to the voluntary discount that they implemented in response to this litigation.[3] $ 220 million in reduced medical bills is a conservative estimate for the four-year Class Period because the Settlement Agreement expands the discount to include PIP patients who have a remaining balance under $ 5,000 after their Florida PIP Insurance pays the Florida HCA-Affiliated Hospital;

D.     The scope of medical services in the settlement agreement is broader than the scope in Plaintiffs' complaint. While Plaintiffs' complaint only seeks injunctive relief for

---

[3] As a result of this litigation, in November 2015, the Florida HCA-Affiliated Hospitals began applying the uninsured discount to patients: (1) who received medical services in the emergency department of a Florida HCA-Affiliated Hospital; (2) whose Florida PIP Insurance paid for a portion of the medical services rendered by the Florida HCA-Affiliated Hospital, (3) who lacked secondary insurance or another payment source at the time they receive the medical services from the Florida HCA-Affiliated Hospital, and (4) who have a remaining balance over $5,000 after their Florida PIP Insurance paid the Florida HCA-Affiliated Hospital.

radiological services rendered in the emergency department, the settlement covers *all* services rendered in the emergency department. Even if Plaintiffs succeeded at trial, the Settlement Class would not receive discounts on non-radiological services provided in the emergency department;

E. Other than Named Representatives Marisela Herrera and Nicolas Acosta, Settlement Class Members are not relinquishing their right to bring individual damages claims for past or future medical services. Settlement Agreement at Exhibit 1 at § II.21;

F. Without a settlement, it will take years for the Settlement Class Members to gain relief, if at all. The class had not yet been certified, and due to the bifurcated discovery schedule, additional discovery would have to be taken before a trial could begin;

G. There is no guarantee that this Court (or the Eleventh Circuit) would have certified Plaintiffs' 23(b)(2) class. While Plaintiffs believe that this case is perfectly suited for class-wide treatment, if the class was denied, then the Settlement Class Members would have received no injunctive relief at all; and

H. It is unclear whether Plaintiffs would have succeeded at trial. While Plaintiffs are confident that they would be able to show that Defendants sought to collect unreasonably high rates from PIP patients, success before the ultimate fact finder was by no means guaranteed.

In short, we believe the settlement is fair, reasonable and adequate and should be approved.

**Notice**

28. As memorialized in the Agreement, the parties agreed that, although no notice is required for this settlement, Epiq Class Action & Claims Solutions, Inc., ("Epiq"), an experienced administrator of class action settlements, would serve as the Notice Administrator for purposes of notifying the Settlement Class. *See* ECF No. 302-1, Settlement Agreement, at § II.16. In consultation with Epiq, the parties agreed upon and proposed that Epic would provide

9

notice to the Class through: (*i*) the creation of a website by the Notice Administrator that would provide information about this Settlement, (*ii*) notification of the settlement on websites targeted at Florida residents, and (*iii*) notification of the settlement in the Florida Bar News. ECF No. 302-1, Settlement Agreement at § II.14. Epiq has provided the three forms of notice required by the Settlement Agreement.

29. Pursuant to the Court's order preliminarily approving the settlement, class members have a deadline of November 15, 2018 to object to the settlement.

30. To date, no class members have objected to the settlement.

**Cohen Milstein's Time and Effort Dedicated to the Case**

31. The schedule attached as Exhibit A, and incorporated herein, is a detailed summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation through September 30, 2018. It does not include any time devoted to preparing this declaration or otherwise pertaining to the Motion for Final Approval of the Settlement Class and Certification of the Settlement or the Motion for Attorneys' Fees, Expenses, and Service Awards. The lodestar calculation is based on my firm's current billing rates. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for my firm's partners, attorneys, and professional support staff included in Exhibit A are the usual and customary hourly rates charged for their services in similar complex litigation. In addition, my firm has submitted fee petitions in other cases that have reported hourly rates at amounts comparable to those sought herein, and courts have approved an award of attorneys' fees in such cases.

32. The total number of hours reasonably expended on this case by my firm from inception to September 30, 2017 is 4,842.25. The total lodestar for my firm at current rates is $2,620,297.50.

33. The time spent on this case by Class Counsel prevented us from working on other cases or taking on additional matters.

34. The expenses my firm incurred in litigation this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, receipts, and check records and other source materials and accurately reflect the expenses incurred.

35. My firm incurred a total of $ 258,300.82 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this case. The largest expenses were the compensation of the experts, paying the discovery platform vendor (who stored documents produced in the litigation), depositions (including deposition travel), and mediation. A summary of Class Counsel's expenses by category is attached as Exhibit B.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 31, 2018

_____
Douglas J. McNamara

# EXHIBIT A

# LODESTAR REPORT

FIRM NAME: Cohen Milstein Sellers & Toll PLLC

Reporting Period: Inception through September 30, 2018

*Herrera et. al. v. JFK Medical Center Limited Partnership, et. al.*
Case No. 8:14-cv-2327-JSM-CPT (M.D. Fla.)

| Legal Professional | | Billing Rate | Number of Hours | Lodestar ($) |
|---|---|---|---|---|
| Axelrod, Matthew | P | $ 715 | 26.75 | $ 19,126.25 |
| Friedman, Andrew | P | $ 900 | 247.00 | $ 222,300.00 |
| Kroeger, Leslie | P | $ 725 | 23.75 | $ 17,218.75 |
| Leopold, Theodore | P | $ 895 | 437.25 | $ 391,338.75 |
| Sellers, Joseph | P | $ 940 | 1.25 | $ 1,175.00 |
| Toll, Steven | P | $ 995 | 10.50 | $ 10,447.50 |
| Martin, Diana | OC | $ 630 | 635.50 | $ 400,365.00 |
| McNamara, Douglas | OC | $ 730 | 570.50 | $ 416,465.00 |
| Guido, Sally | A | $ 530 | 13.00 | $ 6,890.00 |
| Johnson, Nicholas | A | $ 505 | 1.25 | $ 631.25 |
| Kafka, Eric | A | $ 465 | 1,487.25 | $ 691,571.25 |
| Langino, Adam | A | $ 505 | 7.25 | $ 3,661.25 |
| Johnson, Brian E. | SA | $ 375 | 2.50 | $ 937.50 |
| Branch, Joshua | LC | $ 280 | 9.50 | $ 2,660.00 |
| Li, Shengxi | LC | $ 280 | 11.00 | $ 3,080.00 |
| Perlow, Jacqueline | LC | $ 245 | 40.00 | $ 9,800.00 |
| Hughes, Anita | CA | $ 375 | 166.25 | $ 62,343.75 |
| Kottke, Nathan | CA | $ 375 | 263.50 | $ 98,812.50 |
| Saltzman, Joshua B. | CA | $ 375 | 234.25 | $ 87,843.75 |
| **Paralegals** | | | | |
| Dellepiane, Jenny | PL | $235 | 4.50 | $1,057.50 |
| Flanagan, Rachael | PL | $210 | 69.50 | $14,595.00 |
| Hamdan, Shireen | PL | $290 | 13.50 | $3,915.00 |
| Hartnett, Margaret | PL | $275 | 0.75 | $206.25 |
| Linton, Mickale | PL | $225 | 3.75 | $843.75 |
| Whiddon, Tatum | PL | $245 | 149.50 | $36,627.50 |
| White, Amy | PL | $245 | 72.00 | $17,640.00 |
| Wozniak, Mariah | PL | $290 | 340.50 | $98,745.00 |
| **Total** | | | **4,842.25** | **$2,620,297.50** |

2

P = Partner
OC = Of Counsel
A = Associate
SA = Staff Attorney
LC = Law Clerk / Summer Associate
CA = Contract Attorney
PL = Paralegal

# EXHIBIT B

# LITIGATION EXPENSES

## FIRM NAME: Cohen Milstein Sellers & Toll PLLC
## Reporting Period: Inception through September 30, 2018

*Herrera et. al. v. JFK Medical Center Limited Partnership, et. al.*
Case No. 8:14-cv-2327-JSM-CPT (M.D. Fla.)

|  | Total |
|---|---:|
| Appellate Copy Service | $ 3,289.30 |
| Appellate Docketing Fee | $ 505.00 |
| Complaint Filing Fees | $ 812.00 |
| Courier | $ 965.87 |
| Depositions - Court Reporter Fees | $ 6,050.75 |
| Depositions - Transcripts and Videos | $ 13,119.64 |
| Discovery platform vendor | $ 41,767.85 |
| Expert Witnesses/Consultants | $ 125,015.59 |
| Hearing Transcripts | $ 1,123.60 |
| In-House Duplicating | $ 142.30 |
| Legal Research (Lexis, WestLaw, Pacer) | $ 7,138.02 |
| Long Distance Telephone | $ 898.76 |
| Mediation | $ 28,105.00 |
| Other Court Fees | $ 375.00 |
| Outside Duplicating | $ 5.34 |
| Overtime Meals | $ 126.40 |
| Postage | $ 46.38 |
| Process Server Fees | $ 1,283.60 |
| Secretarial Overtime | $ 181.46 |
| Supplies | $ 58.49 |
| Travel - Hotel | $ 7,588.59 |
| Travel - Meals | $ 1,988.29 |
| Travel - Parking Charges | $ 338.11 |
| Travel - Transportation | $ 17,375.48 |
| **Total Expenses** | **$ 258,300.82** |