## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

---

MARISELA HERRERA and NICOLAS
ACOSTA, individually and on behalf of others
similarly situated,

        Plaintiffs,

        v.

JFK MEDICAL CENTER LIMITED
PARTNERSHIP d/b/a JFK MEDICAL
CENTER; MEMORIAL HEALTHCARE
GROUP INC., d/b/a MEMORIAL HOSPITAL
JACKSONVILLE; and HCA
MANAGEMENT SERVICES, L.P.,

        Defendants.

_____/

CASE NO: 8:14–cv–2327–JSM–TBM

---

## CLASS COUNSEL'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 23(e) and 23(h) and this Court's order preliminarily approving settlement and class notice, appointing Class Counsel[1], and setting the final fairness hearing, and upon the Declaration of Douglas J. McNamara, and the attachments thereto, Class Counsel and Plaintiffs Marisela Herrera and Nicolas Acosta hereby move this Court for entry of an Order awarding attorneys' fees and reimbursement of expenses to Class Counsel, and for service awards to the named Plaintiffs.

---

[1] The Court's order identified as Class Counsel Theodore J. Leopold, Andrew N. Friedman, Douglas J. McNamara and Eric A. Kafka of Cohen Milstein Sellers & Toll PLLC. ECF No. 307 at 4.

**INCORPORATED MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

**INTRODUCTION**

After four years of heavily contested litigation, Class Counsel has reached a settlement agreement ("Agreement") with Defendants JFK Medical Center Limited Partnership d/b/a JFK Medical Center ("JFK Medical Center"), Memorial Healthcare Group, Inc. d/b/a Memorial Hospital Jacksonville, and HCA Management Services, L.P. (collectively "Defendants") that provides significant benefits to the class – Florida drivers who purchase Personal Injury Protection ("PIP") insurance and are treated in the emergency room of a Florida HCA-affiliated hospital for injuries arising from an automobile accident. Plaintiffs alleged that Defendants seek to collect amounts from such patients in excess of that permitted under the Florida PIP statute in violation of Florida's Deceptive and Unfair Trade Practices Act. The Settlement requires Florida HCA-Affiliated Hospitals to provide the Class Members with a discount on their emergency department medical bills of at least 85%, amounting to what Plaintiffs estimate will be $220 million in discounts over the four-year Class Settlement period. Class Counsel achieved this result despite early obstacles to class treatment and highly-skilled adversaries.

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel ask this Court for an award of attorneys' fees and expenses in the amount of $3,000,000. Of this requested amount, approximately $261,168.30 would be for expenses, the bulk of which was for experts, travel and transcription costs for numerous depositions, Plaintiffs' discovery platform, and for mediation. These expenses were reasonably and necessarily incurred in prosecuting and resolving this litigation and should be approved by the Court. The remaining amount would be for fees that nearly mirror the lodestar of Class Counsel and other Plaintiffs' counsel.  If that request is granted, the current

multiplier of Class Counsel and other Plaintiffs' counsel's time would be less than 1.01 and will continue to decrease. Attorney's fees are awardable under the FDUTPA. Given the statute and the significant benefit provided by the Settlement, the Court should grant Class Counsel's fee request. Finally, Class Counsel asks that the Court approve service award payments of $6,000 to each of the two class representatives, who substantially assisted the case and the Settlement.

**PERTINENT BACKGROUND**

Class Counsel provided an extensive recitation of the history of the claims in both the Memorandum in Support of Preliminary Approval, ECF No. 301, and in Support of Final Approval. ECF No. 309.  Here, Class Counsel focuses on the work done to achieve the settlement.

**A.      Work Performed by Class Counsel**

Class Counsel commenced this action in state court against JFK Medical Center and HCA Holdings, Inc. in August of 2014. ECF No. 2. The complaint alleged that Defendants and other Florida HCA-Affiliated Hospitals charged unreasonable rates for radiological services provided in their emergency departments to patients covered by Florida PIP Insurance in violation of Florida Statute § 627.736(5)(a). The PIP law requires that hospitals treating patients covered by PIP only charge Florida PIP Insurance companies and their insureds a "reasonable amount" for medical services. ECF No. 2 at ¶ 2. The complaint relied upon violation of the PIP law as evidencing unlawful conduct under the FDUPTA. *Id.,* at ¶ 52.

After removal, Class Counsel amended the complaint to add additional plaintiffs and hospital defendants on September 17, 2014. ECF No. 24. Defendants then filed a motion to dismiss the complaint and to strike the class allegations from the complaint in November of 2014. ECF Nos. 35-36.

In February 2015, this Court denied the motion to dismiss, but did strike the class allegations. *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 87 F. Supp. 3d 1299, 1301 (M.D. Fla. 2015). Class Counsel appealed the portion of the decision striking class claims. In April 2016, the Eleventh Circuit reversed, and remanded the case so that Class Counsel could conduct discovery before a ruling on class certification. *Herrera v. JFK Med. Ctr. Ltd. P'ship,* 648 Fed. App'x., 930, 935 (11th Cir. 2016).

Class discovery proceeded from June 2016 to September 2017. *See* October 31, 2018 Declaration of Douglas J. McNamara ("McNamara Decl."), ECF No. 309-2, ¶ 9.[2] The parties conducted 11 fact depositions. *Id.,* ¶ 12. Class Counsel reviewed tens of thousands of documents produced by Defendants and insurance companies. *Id.*, ¶ 10. Class Counsel fought to get these documents, filing ***nine*** motions to compel. *Id.*, 13.

As class discovery reached an end, Class Counsel determined that class certification pursuant to Rule 23(b)(3) was not tenable. McNamara Decl., ECF No. 309-2, at ¶ 14. However, Class Counsel contended that injunctive relief was appropriate because HCA-Affiliated Florida Hospitals employed a general policy of seeking to collect more from PIP patients (75% of prices included in hospitals' master list of prices for procedures ("chargemaster")) compared to similarly situated emergency room patients who were uninsured (██% of chargemaster) or those whose primary insurer was one of the large private health insurers (on average, about ██% of the chargemaster). *Id.*, ¶ 15. On September 28, 2017, Class Counsel filed a Second Amended Complaint. This complaint removed all claims for damages, and sought only injunctive relief,

---

[2] Class Counsel filed the October 31, 2018 Declaration of Douglas J. McNamara as Exhibit 2 to their Unopposed Motion for Final Approval of the Settlement and Certification of the Settlement Class. *See* ECF No. 309-2. Instead of reattaching that declaration to this brief, Plaintiffs will refer to that declaration as "McNamara Decl., ECF No. 309-2" in this brief.

and class certification solely under Federal Rule of Civil Procedure 23(b)(2). ECF No. 218. Class Counsel then filed their Motion for Class Certification, supported by two expert reports. The motion laid out Plaintiffs' theory of a general discriminatory pricing policy by Florida HCA-affiliated hospitals against PIP patients. ECF No. 252, at 8.

Class Counsel retained two expert witnesses, Dr. Ge Bai and Kevin McCarty. McNamara Decl., ECF No. 309-2, ¶ 16. Dr. Bai is a professor of accounting at Johns Hopkins Carey Business School who researches health care accounting and finance. Dr. Bai provided a methodology designed to determine a geographically-tailored reasonable price for a medical service. Dr. Bai then analyzed charges for radiological medical services for Florida PIP Insurance companies and patients provided from a sample of Florida HCA-Affiliated Hospitals' emergency departments and opined upon whether those charges were reasonable. *Id.*, ¶ 16. Kevin McCarty is the former Florida Insurance Commissioner. He opined upon the meaning of the term "usual and customary" in the context of the Florida health insurance industry. *Id.*

On December 1, 2017, Defendants filed their opposition to the Motion for Class Certification, along with an expert report submitted by Michael Heil. *See* ECF Nos. 264, 268; McNamara Decl., ECF No. 309-2, ¶ 17. The parties requested, and the Court granted, a stay of the litigation while the parties engaged in settlement mediation before Class Counsel filed a reply in favor of class certification. *See* ECF Nos. 281-282; McNamara Decl., ECF No. 309-2, ¶ 17.

In *toto*, Class Counsel and other Plaintiffs' counsel work in this case (based upon counsel's current rates) has resulted in a lodestar of $ 2,729,867.50. *See* Exhibit 1, Combined Lodestar and Expenses; McNamara Decl., No. 309-2, at ¶ 32; Exhibit 2, October 29, 2018 Declaration of Kimberly Boldt, at ¶ 5; Exhibit 3, October 25, 2018 Declaration of Charles

Cartwright, at ¶ 5. Class Counsel and other Plaintiffs' counsel's total expenses amount to $261,168.30, and mostly involve experts, travel and transcription costs for numerous depositions, Plaintiffs' discovery platform, and mediation. *See* Exhibit 1, Combined Lodestar and Expenses; McNamara Decl., No. 309-2, at ¶ 35; Exhibit 2, October 29, 2018 Declaration of Kimberly Boldt, at ¶ 5; Exhibit 3, October 25, 2018 Declaration of Charles Cartwright, at ¶ 5.

### B.    Settlement Negotiations and Settlement Benefits

On March 5, 2018, the parties attended a full-day mediation session in New York City with the Hon. Layn Phillips (ret.) serving as the mediator. McNamara Decl., ¶ 18. Aided by the mediator, the parties discussed the potential contours of a settlement, but the session did not result in a settlement. *Id.* Settlement discussions continued after the mediation session. *Id.* A settlement was agreed upon after a mediators' proposal on May 3, 2018.  *Id.,* ¶¶ 19-20.

The Settlement Agreement provides that all class members will receive a significant discount from Defendants' chargemaster prices for services rendered in the emergency department. ECF No. 302-1 at § 4. The discount will be applied to Settlement Class Members' bills after their Florida PIP Insurance pays the Florida HCA-Affiliated Hospital. *Id.* The PIP Discount will be "calculated based upon the uninsured discount in effect at that Florida HCA-Affiliated Hospital at that time." *Id.* at § II.23. For all Florida HCA-Affiliated Hospitals, this percentage discount will be at least 85% of Settlement Class Members' bills during the Class Period. *Id.* at § II.19. During the Class Period, the Florida HCA-Affiliated Hospitals will use an algorithm that adjusts the percentage discount for changes to their respective chargemasters, but the percentage discount will never fall below 85%. *Id.*

Prior to the filing of this action, Florida HCA-Affiliated Hospitals did not offer an automatic discount to PIP-insured patients who had a remaining bill after their Florida PIP

insurers paid the Florida HCA-Affiliated Hospitals. In response to this litigation, in November

2015, the Florida HCA-Affiliated Hospitals began applying an 85% discount of the chargemaster

rates to patients: (1) who received medical services in the emergency department of a Florida

HCA-Affiliated Hospital; (2) whose Florida PIP Insurance paid for a portion of the medical

services rendered by the Florida HCA-Affiliated Hospital, (3) who lacked secondary insurance

or another payment source at the time they receive the medical services from the Florida HCA-

Affiliated Hospital, and (4) who have a remaining balance over $5,000 after their Florida PIP

Insurance paid the Florida HCA-Affiliated Hospital. *See* McNamara Decl., ECF No. 309-2, at 8,

fn. 3. Defendants estimate that, in 2016, this resulted in ***$55 million*** in discounts to PIP patients.

McNamara Decl., ECF No. 309-2, at ¶ 27(C).

The Settlement expands the patients eligible for a discount by removing the $5,000

threshold. For example, if the Settlement is approved, a Settlement Class Member that would

otherwise owe $ 4,000 to his or her Florida HCA-Affiliated Hospital will owe $ 600 during the

Class Period because of the Settlement. Furthermore, the Settlement makes it mandatory, rather

than discretionary, for all the Florida HCA-Affiliated Hospitals to provide the PIP Discount for

four years. ***Thus, Plaintiffs project that the Settlement will result in approximately $ 220***

***million in discounts***. McNamara Decl., ECF No. 309-2, ¶ 27(C).

Only after the parties agreed to all other terms of settlement did the parties discuss the

payment of attorneys' fees and expenses. *Id.,* ¶ 25. After negotiations over the course of two

months, the parties reached agreement on the total amount Class Counsel could request in fees

and costs and service awards from the Court. *Id.*, ¶ 26. The Settlement provides that Class

Counsel may request of the Court fees and expenses of up to $3 million and the two current

Named Representatives (Marisela Herrera and Nicolas Acosta) may each seek up to $6,000 each

as service payments. ECF No. 302-1 at § VII.A-B.

## STANDARDS FOR APPROVING ATTORNEY'S FEES AND EXPENSES

Counsel whose work results in a substantial benefit to a class is entitled to a fee under the common benefit doctrine. *Boeing Co. v. Van Gemert*, 44 U.S. 472, 478 (1980). The Eleventh Circuit uses a "percentage of the fund" approach to determine the appropriate attorneys' fees. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). The *Camden I* analysis is also used when the attorneys' fees are paid separately by the defendant. *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014). *Camden I* instructs district courts that they may look at least 12 factors in evaluating fee awards: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 946 F.2d at 717-719, citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) (the "*Johnson* factors"). The court noted "other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I.* 946 F.2d at 775.

Apart from the common benefit doctrine, several courts have adopted a "catalyst theory" to award fees where other relief was obtained because of the lawsuit, but before settlement. *See,*

*e.g., Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 96 (D.D.C. 2013) (court found voluntary changes by defendant to stop practice plaintiffs complained about could be calculated into common benefit). *Accord Koppel v. Wien*, 743 F.2d 129 (2nd Cir. 1984). The Eleventh Circuit has recognized this theory where a fee-shifting statute is involved. *Loggerhead Turtle v. County Council of Volusia County, Fla.*, 307 F.3d 1318, 1321 (11th Cir. 2002) (holding that lawyers who obtain relief without judgment entitled to fee if "(1) the defendant takes an action materially altering the legal relationship between the parties such that the parties achieve a significant goal of their suit; (2) their suit was a catalyst for such action; and (3) the plaintiff's claim was colorable and enjoyed reasonable likelihood of success on its merits."

Finally, courts in the Eleventh Circuit often use a lodestar/multiplier method to cross-check attorneys' fees, and in a few cases, they have used the lodestar method to determine attorneys' fees. *See, e.g., Braggs v. Dunn*, 2017 WL 5665334, at *10 (M.D. Ala. Nov. 27, 2017). When a court uses the lodestar method to determine attorneys' fees, the court also looks at the *Johnson* factors to determine the appropriate multiplier. *Id.* In large and complicated class actions, three is the average multiplier, although they range from 2.26 to 4.5. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007). Under all these approaches, Class Counsel's fee and expense requests are appropriate and should be granted.

## ARGUMENT

As described above, because of the Settlement, Plaintiffs project that the discounts for Class Members over four years will be $220 million. McNamara Decl., ECF No. 309-2, ¶ 27(C). Class Counsel seeks $ 3 million in attorneys' fees and expenses, or about 1.5% of the potential monetary benefit being made available to the class. This is well below the *Camden I* benchmark range. As discussed below, the *Johnson* factors support the requested attorneys' fees. The

requested attorneys' fees are also reasonable under a catalyst theory because of the alterations to Defendants' practices the lawsuit triggered. Alternatively, the lodestar approach supports the requested fee and expense amount and comports to a negligible multiplier of less than 1.01.

In addition, the Court should award the expenses, which are reasonable and incurred directly to obtain the result in the case. Finally, the Court should award the service awards to the two named Plaintiffs who sat for depositions, provided document discovery, and contributed to this result on behalf of thousands of Floridians.

## I. THE REQEUSTED FEES ARE REASONABLE UNDER COMMON BENEFIT, CATALYST, AND LODESTAR APPROACHES

### A. The Requested Attorneys' Fees Are Fair and Reasonable Under the Common Benefit Doctrine and The *Johnson* Factors.

#### 1. *The Time and Labor Required and the Preclusion of other Employment Support the Requested Fee*

The first *Johnson* factor concerns the time and labor required. *Johnson*, 488 F.2d at 717. Class Counsel and other Plaintiffs' counsel, including both attorneys and paralegals, have expended more than 5,000 hours prosecuting this action. *See* Exhibit 1, Combined Lodestar and Expenses; McNamara Decl., No. 309-2, at ¶ 32; Exhibit 2, October 29, 2018 Declaration of Kimberly Boldt, at ¶ 5; Exhibit 3, October 25, 2018 Declaration of Charles Cartwright, at ¶ 5. Class Counsel's efforts included:

- Conducting a pre-filing investigation, and interviewing potential plaintiffs;

- Drafting three complaints;

- Reviewing and analyzing tens of thousands of documents;

- Taking seven fact depositions of Defendants and hospital employees;

- Defending four plaintiff depositions;

- Interviewing, preparing and defending two expert witnesses;

- Successfully opposing Defendants' motion to dismiss;

- Successfully reversing the Court's ruling striking class allegations;

- Filing nine motions to compel, which yielded more discovery regarding Defendants' differential chargemaster discounts for patients;

- Filing class certification;

- Negotiating the settlement agreement with Defense Counsel;

- Successfully moving for preliminary approval of the settlement and conditional certification;

- Reviewing settlement materials.

McNamara Decl., ECF No. 309-2, at ¶ 3.

The effort described above also relates to two other *Johnson* factors. The fourth *Johnson* factor concerns "the preclusion of other employment by the attorney due to acceptance of the case", while the seventh Johnson factor is "the time limitations imposed by the client or circumstances. *Johnson*, 488 F.2d at 718. The devotion of hours described above prevented Class Counsel from working on other cases or taking on additional matters. McNamara Decl., ECF No. 309-2, at ¶ 33.  Class Counsel's work on this matter spanned almost five years and included the work of several legal professionals within the firm. *See* Exhibit A to McNamara Decl., ECF No. 309-2 (detailed summary of the amount of time spent by Cohen Milstein's partners, attorneys, and professional support staff who were involved in this litigation through September 30, 2018). This diverted the firm from seeking other matters.

2.    *The Difficulty, Novelty, and Complexity of the Action and the Skill Level Required Support Requested Fee*

The second *Johnson* factor recognizes that counsel should be appropriately compensated for undertaking novel and difficult cases. *Johnson*, 488 F.2d at 718. The third factor asks the court to consider "the skill requisite to perform the legal service properly." *Id*. Class actions are

often extremely complicated litigation that require thorough and detailed research of almost every question involved. *Yates v. Mobile County Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983). The court should also consider the quality of defense counsel. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001).

Consistent with the second and third *Johnson* factors, the magnitude and complexity of this action, the difficulty and novelty of the legal and factual issues involved, and the skill level required to reach a settlement in this case support the requested fee. Class Counsel's liability theory relied on complex and novel issues regarding healthcare pricing, insurance agreements among numerous insurers and the Defendants, and Medicare and Medicaid pricing.

This case was arduous and Goliathan. Defendants had at least four law firms assisting them, including firms specializing in healthcare law, and a nationally recognized civil litigation firm, Debevoise & Plimpton. When the Court struck the class claims, Class Counsel was forced to appeal. Class Counsel navigated the complex issues to present a strong liability claim. Counsel worked with experts with decades of experience in the health insurance field to address the lawfulness of Defendants' conduct towards PIP patients. Class Counsel also reviewed the evidence and altered the class theory to target solely (b)(2) certification when a class-wide damage model proved untenable. McNamara Decl., ¶ 14. *Behrens,* 118 F.R.D. at 547 (observing the size of the class, the difficult theories of liability, and the problems associated with damages demonstrated that class counsel merited fee request).

3.    *The Customary Fee and a Comparison of Similar Cases Supports the Requested Fee*

Looking at the fifth and twelfth *Johnson* factors—the "customary fee" and "awards in similar cases", the requested amount is justified. *Johnson,* 488 F.2d at 718-719. In 2012, Judge Torres found that "the average percentage award in the Eleventh Circuit mirrors that of awards –

nationwide – roughly one third." *Wolff v. Cash 4 Titles*, No. 03-22788-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla., Sept. 26, 2012) (collecting cases where attorneys were awarded between 30% and 33% in the Southern District of Florida and Middle District of Florida). As discussed above, the requested fee comprises less than 2% of the discount benefit.

        4.    *The Risk Borne by Class Counsel in Taking on this Contingency Fee Class Action Supports the Requested Fee*

"Whether the fee is fixed or contingent" is the sixth *Johnson* factor to consider when awarding attorneys' fees. Johnson, 488 F.2d at 719.[3] Courts have recognized that "risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339–40 (S.D. Fla. 2007); *see also Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* No. 01-CV-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."). As one treatise notes:

> It is axiomatic that attorneys who work on a contingent fee must charge a higher fee than those who work on a noncontingent fee basis …this "higher" fee … is not a bonus.
> From a pure dollars and cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services, (1) to induce the attorney to agree to assume the risk that no compensation will be received unless he or she successfully achieves a benefit for the client, and (2) if ultimately successful to compensate for the cost suffered and investment income foregone by delay in payment.

H. Newberg, *Attorney Fee Awards*, § 1.08 (1986).

Like other class actions, the risk to Class Counsel was significant—even more so as the

---

[3] Since this was a contingency fee class action case, the *Johnson* factors of "the nature and length of the professional relationship with the client" is not relevant. *Johnson,* 488 F.2d at 719. The tenth *Johnson* factor – the "undesirability" of a case referred to how the community may not appreciate certain cases, like civil rights - which is not implicated here. *Id.*

case relied on complex and novel liability theories. Class Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses with no guarantee of attorney compensation. "There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005). Class Counsel tread into an area fraught with failure: attempts to certify PIP cases have routinely failed.[4] Class Counsel's assumption of this contingency fee risk supports the reasonableness of the requested fee.

> 4.    *The Amount Involved and the Results Obtained Support the Requested Fee*

Consistent with the eighth *Johnson* factor, Class Counsel has obtained an excellent result for the class. *Johnson*, 488 F.2d at 719. Under the Agreement, Class Members may obtain a discount of 85% off the chargemaster prices instead of the 25% discount the litigation targeted as

---

[4] *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 Fed.Appx. 762, 765 (11th Cir. 2012) (affirming denial of class certification of claim that insurance company violated PIP law by using Medicare and Medicaid's National Correcting Coding Initiative (NCCI) edits to limit reimbursement because, among other factors, monetary relief was not incidental to equitable relief); *Cielo v. Garrison Prop. & Cas. Ins. Co.*, No. 8:15–cv–2324–T–23TBM, 2016 WL 1244552 (M.D. Fla. Mar. 30, 2016) (denying class certification of claim that insurance company violated PIP statute by limiting reimbursement for medical payments based on Medicare fee schedules); *Bailey v. Rocky Mountain Holdings, LLC*, 309 F.R.D. 675 (S.D. Fla. 2015) (denying class certification of claim that emergency transportation operators violated PIP statute by billing in excess of statutory limits because monetary relief was not incidental, and individual issues existed given each class member's insurance policy and exhaustion of benefits); *All Family Clinic of Daytona Beach Inc. v. State Farm Mut. Auto. Ins. Co.*, 280 F.R.D. 688 (S.D. Fla. 2012) (denying class certification of claim that insurance company violated PIP law by improperly reducing or denying reimbursement for MRIs based on the "reasonableness" of each charge because individual issues predominated); *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 538 (S.D. Fla. 2010) (denying class certification in claim that insurance company violated PIP law by using Medicare and Medicaid's NCCI edits to limit reimbursements because, among other factors, typicality was lacking).

unlawful. McNamara Decl. at, ECF No. 309-2, at ¶ 23; ECF No. 302-1 at § II.19. The total

discount over the four-year Class period is estimated to be $220 million. McNamara Decl., ECF

No. 309-2, at ¶ 27(C).[5] Further, the settlement extends the discounts to all emergency room

services – and not just the radiological services (MRI, CT-scans, x-rays) noted in the original

complaint and the class certification motion. Meanwhile, the fee request here, (including

expenses) is $3 million, or approximately 1.4% of the estimated benefit.

     5.     *The Experience, Reputation, and Ability of the Attorneys Support the Requested Fee*

     The ninth *Johnson* factor is the experience, reputation, and ability of the attorneys.

*Johnson*, 488 F.2d at 718-719. This factor also supports the reasonableness of the requested fee,

as it recognizes firms with greater experience and prestige merit higher remuneration in the

marketplace. As demonstrated in Class Counsel's firm resume, Cohen Milstein is highly

experienced in the fields of class actions and consumer law. ECF No. 302-3. Cohen Milstein has

had substantial success in litigating consumer class actions and other complex litigation across

the country. Class Counsel prosecuted this action with great persistence, skill, and creativity and

believe that the quality of the result obtained for the Class provides strong evidence of the

quality of Class Counsel's representation.

     6.     *The Other* Camden *factors Support the Requested Fee*

     The Eleventh Circuit has noted some other factors pertinent to a fee request, including

---

[5]While the $220 million is not a true "fund," in the Eleventh Circuit, "the value of the nonmonetary relief" can be included as "part of the settlement pie" in determining the value provided to the class. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015); *see also e.g., In re: Checking Account Overdraft Litig.*, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013). Moreover, the settlement is judged by the "opportunity created for the class members," not the cost to the defendant. *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *7 (S.D. Fla. Oct. 24, 2014).

whether there are any substantial objections by class members or other parties to the settlement

terms or the fees requested by counsel, [and] any non-monetary benefits conferred upon the class

by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946

F.2d at 775. The non-monetary benefits are detailed above. To date, the reaction of class

members to the settlement has been positive. While the time to object to the settlement is not

until November 15, 2018, no objections have been received. McNamara Decl., ECF No. 309-2,

at ¶ 30. The economics of prosecuting a class action involving a large hospital system has been

noted above, along with the time (four years) it has taken to get to a settlement. All support the

requested fee.

### B. Class Counsel's Fee Request is Also Reasonable under the Lodestar Method

Courts often use a lodestar/multiplier method to cross-check attorneys' fees, and in a few

cases, they have used the lodestar method to determine attorneys' fees. *See e.g., Braggs v. Dunn*,

2017 WL 5665334, at *10 (M.D. Ala. Nov. 27, 2017). When a court uses the lodestar method to

determine attorneys' fees, the court also looks at the *Johnson* factors to determine the

appropriate multiplier. *Id.* In large and complicated class actions, three is the average multiplier,

although they range from 2.26 to 4.5. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334,

1344 (S.D. Fla. 2007); *Parsons v. Brighthouse Networks*, LLC, 2015 WL 13629647, at *15

(N.D. Ala. Feb. 5, 2015) (noting courts routinely approve multipliers of three or greater).

Class Counsel and other Plaintiff's counsel's lodestar of $2,729,867.50 and $ 261,168.30

in costs (for a total combined lodestar and costs of $ 2,989,046.80) is just below the $3 million

provided by the Agreement. Under a lodestar calculation, the 1.01 multiplier (which diminishes

with every filing by Class Counsel) is below what is often awarded. This is well below the

average lodestar multiplier of 3.0 for complex class actions in the Eleventh Circuit. *See Pinto v.*

*Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007). Much greater

multipliers have also been approved for 23(b)(2) injunctive-relief only classes. *See e.g., Berry v.*

*Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (1.99 multiplier); *Yong Soon Oh v. AT&T Corp.,*

225 F.R.D. 142, 154 (D.N.J. 2004) (2.15 multiplier); *First State Orthopedics v. Concentra, Inc.,*

534 F. Supp. 2d 500, 524 (E.D. Pa. 2007) (1.9 multiplier).

### C.    The Requested Fee is Also Justified Under the Catalyst Theory

The requested fee and expense amount are also justified under a "catalyst" theory.

*Loggerhead Turtle v. County Council of Volusia County, Fla*., 307 F.3d 1318 (11th Cir. 2002).

In *Loggerhead*, the  Eleventh Circuit noted that lawyers who obtain relief without a judgment are

entitled to a fee if (1) the defendant takes an action materially altering the legal relationship

between the parties such that the plaintiffs achieve a significant goal of their suit; (2) their suit

was the catalyst for such action; and (3) the plaintiffs' claim was colorable and enjoyed

reasonable likelihood of success on the merits. *Id.* at 1321. The litigation here led HCA-affiliated

Florida hospitals to materially alter their position prior to the Settlement. HCA-affiliated Florida

hospitals used to expect payment of 75% of their chargemaster prices from PIP patients. Starting

in 2015, after the suit was filed and returned with class claims by the Eleventh Circuit, HCA-

affiliated Florida hospitals employed a voluntary discount of 85% to PIP patients who received

medical services in the emergency department, and who lacked a secondary insurance or other

payment source and a remaining balance over $5,000. McNamara Decl., ECF No. 309-2, at 8 n.

3. Defendants reported that this provided approximately $55 million in discounts in 2016.

McNamara Decl., ECF No. 309-2, at ¶ 27(C). Thus, prior to the Settlement, Defendants took an

action materially altering the treatment of PIP patients. This change was a goal sought by Class

Counsel—that PIP patients are charged similar rates as other patients. Further, the claims

enjoyed a reasonable likelihood of success on the merits. This Court denied the motion to dismiss the FDUTPA claims that hinged upon violation of the PIP statutes, *see* ECF No. 51, at 8-10, and Class Counsel argued that the evidence uncovered in the course of discovery supported the allegations that HCA-affiliated Florida hospitals had a policy of expecting a higher payment from PIP patients than other patients. *See* ECF No. 252, at 3-7. Although, as described above, the Settlement expanded the scope of Defendants' pre-Settlement change to its collection practices, the $3 million requested in fees (and expenses) is less than 5.5% of the amount of the discounts provided in 2016 alone.

## II.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Plaintiffs' Counsel is entitled to reimbursement of "reasonable and necessary" costs incurred while prosecuting the case. *Waters,* 190 F.3d, at 1295–96. Class Counsel and other Plaintiffs' counsel incurred $261,168.30 in litigation expenses. *See* Exhibit 1, Combined Lodestar and Expenses; McNamara Decl., No. 309-2, at ¶ 35; Exhibit 2, October 29, 2018 Declaration of Kimberly Boldt, at ¶ 5; Exhibit 3, October 25, 2018 Declaration of Charles Cartwright, at ¶ 5.

These expenses "were advanced by [Plaintiffs' Counsel] for the benefit of the Settlement Class [and] were necessarily incurred in furtherance of the litigation of the Action and the Settlement," and thus should be approved by the Court. *In re: Checking Account Overdraft Litig. MDL No. 2036*, No. 1:09-M D-02836-JLK, 2014 WL 11370115, at *18 (S.D. Fla. Jan. 6, 2014) (citing *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).

Plaintiffs kept detailed contemporaneous records and ensured that each expense was reasonable and necessary. McNamara Decl., No. 309-2, at ¶ 34. The largest expenses were for experts, travel and transcription costs for numerous depositions, Plaintiffs' discovery platform,

and for mediation. McNamara Decl., No. 309-2, at ¶ 34; *see also* Exhibit B to McNamara Decl. (summary of Class Counsel's expenses by category). These expenses, like all submitted for reimbursement, were reasonable and necessary for the prosecution of this litigation.

## III.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS

Class Counsel requests approval of incentive awards of $6,000 for each of the Named Plaintiffs in this action. ECF No. 302-1 at § VII.A-B. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, F.R.D. 685, 694 (N.D. Ga. 2001). Small awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. See MANUAL FOR COMPLEX LITIGATION § 21.62 n. 971 (4th ed. 2006) (awards may be "merited for time spent meeting with Class members, monitoring cases, or responding to discovery"); *Wilson v. EverBank*, 2016 WL 457011, at *15 (approving $5,000 incentive awards for class representatives acting as "private attorney generals seeking a remedy for what appeared to them to be a public wrong").

Plaintiffs request $6,000 service awards for each of the two named Plaintiffs, Marisela Herrera and Nicolas Acosta (for a total of $12,000). The named Plaintiffs put the interests of the class ahead of their own interests by waiving their damages claims (although other class members can pursue individual damages claims). They also devoted many hours to this case, including sitting for depositions, and searching for and producing relevant documents. These requests are reasonable and should be approved.[6]

---

[6] Higher service awards are common. *See, e.g., Diakos v. HSS Sys., LLC*, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 5, 2016).

Class Counsel's Motion for Fees                                   CASE NO. 8:14-CV-2327-JSM-TBM

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court award Plaintiffs'

counsel $3,000,000 in fees and expenses, and the payment of $6,000 incentive awards to the two

class representatives.


Dated: October 31, 2018                          Respectfully submitted:


                                                 By:  /s/ Eric A. Kafka

                                                 Theodore J. Leopold
                                                 Leslie M. Kroeger
                                                 Diana L. Martin
                                                 COHEN MILSTEIN SELLERS & TOLL
                                                 PLLC
                                                 2925 PGA Boulevard, Suite 200
                                                 Palm Beach Gardens, FL  33410
                                                 Telephone: (561) 515-1400
                                                 Facsimile: (561) 515-1401
                                                 tleopold@cohenmilstein.com
                                                 lkroeger@cohenmilstein.com
                                                 dmartin@cohenmilstein.com

                                                 Douglas J. McNamara (pro hac vice)
                                                 Eric A. Kafka (pro hac vice)
                                                 COHEN MILSTEIN SELLERS & TOLL
                                                 PLLC
                                                 1100 New York Ave. NW, Ste. 500
                                                 Washington, DC 20005
                                                 Telephone: (202) 408-4600
                                                 Facsimile: (202) 408-4699
                                                 dmcnamara@cohenmilstein.com
                                                 ekafka@cohenmilstein.com

                                                 *Class Counsel*

Class Counsel's Motion for Fees                    CASE NO. 8:14-CV-2327-JSM-TBM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 31, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will provide electronic service to the following:

Walter J. Taché, FBN 28850
wtache@tachebronis.com
Magda C. Rodriguez, FBN 72688
mrodriguez@tachebronis.com
Taché, Bronis, Christianson
 and Descalzo, P.A.
150 Southeast 2nd Avenue, Suite 600
Miami, FL 33131
Tel: (305) 537-9565
Fax: (305) 537-9567
*Attorneys for Defendants JFK Medical*
*Center Limited Partnership d/b/a JFK*
*Medical Center; and Memorial Healthcare*
*Group, Ltd. d/b/a Memorial Hospital*
*Jacksonville*

George A. Shannon, Jr., *Pro Hac Vice*
gshannon@smfadlaw.com
Adam C. Kiehne, *Pro Hac Vice*
akiehne@smfadlaw.com
Shannon, Martin, Finkelstein, Alvarado &
Dunne, P.C.
1001 McKinney Street, Suite 1100
Houston, TX 77002
Tel: (713) 646-5500
Fax: (713) 752-0337
*Attorneys for Defendant HCA Management*
*Services, L.P.*

John D. Emmanuel, FBN 0475572
john.emmanuel@bipc.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Buchanan Ingersoll & Rooney PC
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Tel: (813) 222-8180 / Fax: (813) 222-8189
*Attorneys for Defendant HCA Management*
*Services, L.P.*

DATED:   October 31, 2018              /s/      Eric A. Kafka_____

Theodore J. Leopold
tleopold@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Boulevard, Suite 200
Palm Beach, FL 33410

Andrew N. Friedman

afriedman@cohenmilstein.com
Douglas J. McNamara
dmcnamara@cohenmilstein.com
Eric Kafka
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
East Tower, 5th Floor
Washington, DC 20005

*Class Counsel*